GAERTNER, Plaintiff in Error, v. STATE, Defendant in Error.*

*April 14—May 9, 1967.*

---

* Motion for rehearing denied, without costs, on August 22, 1967.

162

Thomas D. Gaertner (the defendant) was found guilty by a jury of attempted burglary (secs. 943.10 (1) (a) and 939.32, Stats.), and sentenced by the court to five years imprisonment, the sentence to be served consecutively to a sentence which he was serving on parole at the time of the commission of the burglary. After his conviction and commencing with his post-trial motions, the defendant proceeded *pro se,* rejecting representation by counsel on his appeal. This case was submitted on briefs.

The cause was submitted for the plaintiff in error on the briefs of *Thomas D. Gaertner* of Waupun, *pro se,* and for the defendant in error on the brief of *Bronson C. La Follette,* attorney general, *Hugh R. O'Connell,* district attorney of Milwaukee county, and *Allen L. Samson,* assistant district attorney.

HALLOWS, J. The defendant's conviction is first challenged on the ground the circuit court lacked subject-matter jurisdiction because secs. 954.01 and 954.02, Stats., are unconstitutional in that they permit a complaint which is to be the basis for a warrant to be made before a clerk of the county court, who is not qualified to determine probable cause and hence the complaint is void. In *State*

*ex rel. White v. Simpson* (1965), 28 Wis. (2d) 590, 137 N. W. (2d) 391, we held that an arrest warrant may be issued upon a complaint only by an impartial magistrate upon the showing of probable cause and the issuance of such a writ by a clerk of the court upon the order of the district attorney did not provide the procedure by which a warrant is issued by an impartial magistrate. That case was soon followed by *State ex rel. La Follette v. Raskin* (1966), 30 Wis. (2d) 39, 139 N. W. (2d) 667, and *State ex rel. La Follette v. Moser* (1966), 30 Wis. (2d) 56, 139 N. W. (2d) 632, in which we held a defective warrant of arrest went to jurisdiction over the person, not to the subject-matter jurisdiction of the court, and the objection was waived if not raised before the defendant pleaded to the information. We further held *State ex rel. White v. Simpson, supra,* was to be applied prospectively only. These principles were reaffirmed in *Pillsbury v. State* (1966), 31 Wis. (2d) 87, 142 N. W. (2d) 187, and followed in *Galloway v. State* (1966), 32 Wis. (2d) 414, 145 N. W. (2d) 761, 147 N. W. (2d) 542. In *Pillsbury,* where substantially the same argument as that now before us was raised, we held the nonexistence of a complaint and failure to issue a warrant did not go to the jurisdiction of the court to try the accused on the information.

In the instant case the defendant was provided with counsel on December 8, 1964. He was arraigned and pleaded guilty on January 21, 1965. Between these dates he was in court for various motions five times and at no time was the jurisdiction of the court questioned. Objection to the complaint and warrant of arrest was raised for the first time on motions after verdict. The defendant's contention that the trial court lacked subject-matter jurisdiction has no merit and, considered as an objection to personal jurisdiction, has been waived.

The defendant contends he was entitled to be released on bail before trial even though he was a parolee at the time. The basic principle underlying the right to reasonable bail is the presumption of innocence and any denial

of personal liberty must meet the test of due process. The right to reasonable bail was recently considered in *Whitty v. State* (1967), 34 Wis. (2d) 278, 149 N. W. (2d) 557. If defendant had not been on parole at the time of his arrest, he would have been entitled to bail upon his arrest. However, because he was also held upon an order of the department of public welfare as a parole violator he was not entitled to bail. But for such detention, he was entitled to be held in prison rather than in the county jail awaiting a criminal charge where such imprisonment does not count toward the serving of his sentence. Under sec. 57.06 (3), Stats., every paroled prisoner remains in the legal custody of the department unless otherwise provided by the department and a paroled prisoner may be returned to prison at any time on the order of the department. Under sec. 57.072, the period of parole ceases upon the commission of a crime or some other violation of the terms of parole which is sufficient in the opinion of the court or the department to warrant revocation of parole. During the period that parole is tolled the prisoner is not serving his sentence until he is returned to the penal institution to which he was sentenced or from which he was paroled or from the date of an order of reinstatement of the parole. Consequently, a parole violator held in the county jail is not serving his sentence and is given no credit for such time. While the defendant was entitled to complain of the place of his custody as a parole violator, he was not entitled to bail.

The complaint which was the basis for the warrant of arrest was made on information and belief by Detective William Schendel who was not called as a witness at the trial. A complaint on information and belief is proper. *State v. Luczaj* (1960), 9 Wis. (2d) 199, 100 N. W. (2d) 368; sec. 954.02 (1), Stats. The charge in the complaint was substantially repeated in the information and read to the jury. On these facts the defendant argues the failure of the state to call Detective Schendel as a witness denied him his constitutional right of confrontation. We think

not. The Sixth amendment to the United States constitution secures to the accused the right "to be confronted with the witnesses against him." This basic and fundamental right is applicable to the states by the obligation of the due-process clause of the Fourteenth amendment. *Pointer v. Texas* (1965), 380 U. S. 400, 85 Sup. Ct. 1065, 13 L. Ed. (2d) 923. But even if this were not so the Wisconsin constitution, sec. 7, art. I, guarantees the right in all criminal prosecutions to the accused "to meet the witnesses face to face." The right of confrontation, it has been said, is "not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers." 5 Wigmore, Evidence (3d ed.), p. 123, sec. 1395. See also 21 Am. Jur. (2d), Criminal Law, p. 360, sec. 333.

While in a popular sense we say an accused has a right to face his accusers, we mean "witnesses against him." However, the right of confrontation does not require the state to produce any particular witness or give the accused the right to insist that the state call any particular witness. *People v. Fisher* (1962), 208 Cal. App. (2d) 78, 25 Cal. Rptr. 242; *People v. Jolliff* (1964), 31 Ill. (2d) 462, 202 N. E. (2d) 506. Not even the victim, or the accuser in the sense of the person swearing to the complaint which becomes the basis for the arrest, need be called as a witness. *State v. Boodry* (1964), 96 Ariz. 259, 394 Pac. (2d) 196; *Harris v. Commonwealth* (Ky. 1958), 315 S. W. (2d) 630. The constitutionally guaranteed right of confrontation applies in relation to the giving of testimony which is considered by the trier of the fact on the issue of the accused's guilt. Complaining witnesses or an informer or a decoy are not witnesses within such constitutional requirement when they neither become witnesses in person at the trial nor otherwise give testimony to be used on the issue of guilt. *State v. Mace* (1959),

86 Ariz. 85, 340 Pac. (2d) 994; 23 C. J. S., Criminal Law, p. 1047, sec. 999. The constitution guaranteed the common-law right of confrontation along with the common-law limitations and exceptions. As was true at common law, the right of confrontation is satisfied if the accused meets the witness face to face at the time he is testifying and then has the opportunity of cross-examining him. This does not necessarily have to occur at the trial. It may occur at the preliminary examination. While an opportunity for the finder of fact to observe the demeanor of witnesses is of advantage, it is not necessarily an essential element of the right of confrontation. *State ex rel. Drew v. Shaughnessy* (1933), 212 Wis. 322, 249 N. W. 522; *Spencer v. State* (1907), 132 Wis. 509, 112 N. W. 462.

The defendant relies on *United States v. Douglas* (7th Cir. 1946), 155 Fed. (2d) 894, wherein the right to confront witnesses was held to be denied when the trial court permitted two affidavits clipped to the information to be sent to the jury. Only one of the affiants had appeared at the trial and such submission of affidavits, which stated facts supporting all elements of the offense charged, without the right to cross-examine the other affiant constituted evidence upon the issue of guilt. The facts of *Douglas* must also be distinguished from the case before us, where the information was merely read to the jury to inform them of the issue to be determined. The reading of the charge is not evidence.

The defendant complains of error in admitting into evidence a tire iron found at the scene of the attempted burglary and the use of a statement he made to the police. Recital of sufficient facts to understand these contentions is necessary. At approximately 3 a. m. on the morning of Monday, October 19, 1964, two Milwaukee police officers observed two men attempting to pry open the rear door of the Allstate Building Supply Company on Green Bay avenue in Milwaukee. The policemen were

seen by the two men who, after a chase, escaped. About 8 p. m. on the same day the defendant and one Ernest Erdman were arrested. On the following day about 11 a. m. the defendant signed a statement for the police admitting he was at the building at the time of the alleged offense, was trying to gain entry and ran away when he saw the policemen. A tire iron was found near the door, which had marks on it similar to those which might have been made by such an instrument.

It is argued it was error to admit the tire iron in evidence because it was not sufficiently related to the crime or the defendant. We disagree. Ernest Erdman, who turned state's witness, testified the defendant used a tire iron in trying to force the door of the Allstate building. The iron was identified as being the one found near the door by a detective who scratched his initials and the date on it at the time for identification purposes. We find no error in its admission into evidence.

During the course of the trial the state called as a witness Detective Telesfore Wysocki who testified concerning the interrogation of the defendant at the police station. After some preliminary questions the prosecutor told the court in the presence of the jury, "Your Honor, I am about ready now to touch upon a statement in writing made by the defendant." The jury was thereupon excused and an extended hearing on the voluntariness of the confession was had. At the conclusion of the hearing, the trial court found the confession was the result of coercive conduct on the part of the police and also the defendant had not been informed of his right to counsel and therefore the confession was inadmissible. The jury was not recalled until the following day at which time Wysocki did not take the stand and was not excused in the presence of the jury. The next witness was called by the state and the trial continued without comment or explanation by the court.

The defendant contends it was reversible error for the court to fail to instruct the jury to disregard the remarks made by the prosecutor just before excusing the jury to the effect that he was "about ready now to touch upon a statement in writing made by the defendant." The making of this remark in the presence of the jury by the prosecutor was not necessary to obtain a hearing and was informative to the jury. At the time the assistant district attorney was treading his way toward dangerous grounds. The voluntariness of the confession had been challenged by the defense and it was clear a "Jackson v. Denno" [1] hearing was to be conducted upon the issue. Certainly a simple request that the jury be excused would have been sufficient. We disapprove of this attempt to inform the jury indirectly of what it did not have a right to hear directly, but perhaps *per se* this would not be a ground for reversal. The primary responsibility for trying a lawsuit and for objecting to such a remark and for requesting instructions to the jury to disregard the remark was upon trial counsel. *Whitty v. State, supra.*

At the conclusion of the direct examination of the defendant the defense counsel asked in reference to his alibi whether the defendant had told the police he had been at certain restaurants at the time the crime was committed. The defendant answered, "I didn't tell the police force anything." We take this answer in the context of the trial to mean he did not confess. From the record we think it was so understood by the defendant, the attorneys and the jury although probably not by the trial judge. On cross-examination the prosecutor was permitted to ask the defendant whether he had refused "to make any statement to these detectives?" The defendant answered he might have given them a verbal state-

[1] See *Jackson v. Denno* (1964), 378 U. S. 368, 84 Sup. Ct. 1774, 12 L. Ed. (2d) 908, 1 A. L. R. (3d) 1205; and *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753.

ment but if he gave them any statement at all he did not know what it was about. There is some confusion in the record and an apparent misunderstanding between the court and counsel as to the extent of cross-examination. Although the trial court attempted to limit it and not allow in the contents of the statement which was the confession, the district attorney was successful in several instances in conveying to the jury in our view the fact that he had a written confession and that he was going to use it to impeach the defendant.

The question now raised is whether it was error to permit the state to impeach the defendant in this manner. We recognize there is a conflict among the authorities on the question whether an involuntary and hence inadmissible confession may be used to impeach an accused who takes the witness stand in his own behalf, but this question seems to have been settled in Wisconsin. At least seventy years ago in *Shephard v. State* (1894), 88 Wis. 185, 59 N. W. 449, we stated:

"The confession was rejected because it was extorted. It was unfair to the accused, and should not be proved against him, and is condemned by the court and ruled out. When the defendant was asked if he made that confession, and denied it, the same witnesses who extorted the confession, and whose testimony was disallowed on that account, are allowed to testify to the confession, however wickedly or wrongly it was obtained, on the exceedingly narrow theory that it is not admitted as a confession, but merely to contradict the witness. The confession is allowed to go to the jury, and have its effect in convicting the defendants, and override the ruling of the court that it was inadmissible as evidence against him, and for such a petty reason. The confession is just as objectionable as evidence, and as incompetent and hurtful, when offered in one way as in another. If no other evidence on the ground of contradicting the defendant as a witness could be found, he had better have gone uncontradicted than that his legal rights as a prisoner should be so violated and his conviction obtained by such unlawful testimony. The object is to get the confession in evidence. It cannot be done directly but it can be done indirectly. It cannot

be used to convict, but it can be used to contradict, the defendant, and in that way it is used to convict him all the same. We cannot adopt such a principle or practice in the administration of criminal law. It is unreasonable as well as unjust. This evidence was inadmissible on the familiar ground that a witness cannot be cross-examined and contradicted in respect to matters not admissible in evidence as part of the case."

There is a line of federal cases stemming from *Walder v. United States* (1954), 347 U. S. 62, 74 Sup. Ct. 354, 98 L. Ed. 503, and limited to nonincriminatory statements or, if incriminatory, inadmissible not because they are involuntary and hence inherently untrustworthy but they are inadmissible because obtained in violation of the *McNabb-Mallory* exclusionary rule of public policy. See *McNabb v. United States* (1943), 318 U. S. 332, 63 Sup. Ct. 608, 87 L. Ed. 819; *Mallory v. United States* (1957), 354 U. S. 449, 77 Sup. Ct. 1356, 1 L. Ed. (2d) 1479.

The conflict between the exclusionary rule of *McNabb* and the desire for truth provable by trustworthy evidence inadmissible directly on the question of guilt was climaxed in *Tate v. United States* (D. C. Cir. 1960), 283 Fed. (2d) 377. In *Tate,* the defendant made statements to the police which not only incriminated him but also contained information on his arrival at the scene of the crime with a friend. On trial he stated he came to the area alone and that he did not even know the person he had referred to in his statements to the police while unlawfully detained. The prosecution was permitted to impeach the defendant with the testimony of a police officer who related nonincriminating parts of the statements made by the defendant while he was unlawfully detained. The court pointed out none of the acts used for impeachment in and of themselves constituted an element of the case against him "and were lawful, proper acts." To the argument that the use of such evidence would exert an undesirable influence on the accused so that he would refrain from testifying on his own behalf,

the court replied it thought such effect unlikely because the defendant was still free to deny all elements of the crime without fear of impeachment. In *Inge v. United States* (D. C. Cir. 1966), 356 Fed. (2d) 345, 349, the court summarized the rule in that circuit:

"The Supreme Court has held that in some circumstances an accused can be impeached by use of otherwise inadmissible evidence. *Walder v. United States,* 347 U. S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954). But the Court cautioned that a defendant 'must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief.' Since then, we have held that an inadmissible statement can be used only when the defendant makes 'sweeping claims' that go far beyond the crime charged, is impeached on a statement relating to 'lawful proper acts' 'collateral' to the issues before the jury, or is questioned about 'minor points.' In such situations, impeachment of the defendant affects only his credibility, since the truth of the impeaching statement does not itself tend to establish guilt."

The court then decided it was error to impeach with statements which it considered bore directly on the central issue of self-defense or of guilt. The more recent cases repudiate any distinction based upon the reason for inadmissibility and thus have increased numerically the majority rule. The latest such case is *State v. Brewton* (Or. 1967), 422 Pac. (2d) 581, in which the confession, although voluntary, was inadmissible because it fell under the exclusionary rule as not meeting constitutional requirements in the *Escobedo* sense. *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977. The Oregon court in this decision sees no distinction between a voluntary and involuntary unconstitutional confession for the purpose of impeachment and substitutes public policy as a ground when the confession is trustworthy. The court refused to follow the "middle rule" of *Tate* because it believed that a restriction on the

application of the exclusionary rule to enforce substantive constitutional rights of the Fourth, Fifth and Sixth amendments would be a major step backward. We need not go so far in the instant case because the confession here was involuntary and thus inherently untrustworthy. We think such confession cannot be used for any purpose.

Another recent case, *State v. Turnbow* (1960), 67 N. M. 241, 354 Pac. (2d) 533, 89 A. L. R. (2d) 461, held an involuntary confession is inadmissible to impeach the accused as a witness for the same reason that hearsay or other incompetent evidence is inadmissible for impeachment purposes, namely, it is unworthy of belief. This case relies on 3 Wigmore, Evidence (3d ed.), p. 242, sec. 821, and *Harrold v. Territory of Oklahoma* (8th Cir. 1909), 169 Fed. 47, 17 Ann. Cas. 868.

We think the majority rule based as it is upon untrustworthiness of the confession or incriminating statement or upon inadmissibility because of a violation of a basic constitutional right is more logical and just than the minority view based upon waiver. We do not think an accused who takes the witness stand waives his constitutional right against self-incrimination and involuntary confessions. It has been recognized a defendant cannot be tricked into denying or admitting acts so that he may be impeached with otherwise inadmissible evidence. *Agnello v. United States* (1925), 269 U. S. 20, 46 Sup. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409. We see little difference when the defendant testifies. One does not open the door to a nullity. The two views and many of the cases supporting them are found in an annotation entitled "Impeachment of accused as witness by use of involuntary or not properly qualified confession," 89 A. L. R. (2d) 478.

In the present case the details of the confession or the contents of the written statement were not given to the jury but it was informed by questions and answers and by the remarks of the assistant district attorney in the

presence of the jury that defendant had given the police a written confession. We see no distinction between telling the jury the fact of the existence of a confession and disclosing its details. However, on the facts of this case we do not think it was reversible error to use the statement for impeachment. The case against the defendant was not based on circumstantial evidence. It was based primarily on the testimony of Erdman who testified he accompanied the defendant in the attempted burglary. The physical facts and the testimony of the police officers who came upon the scene corroborated Erdman's story beyond the point of reasonable doubt. There was sufficient evidence without regard to the improper testimony and remarks which was sufficient to establish the defendant's guilt beyond a reasonable doubt. We think therefore the harmless-error rule is applicable. *Whitty v. State, supra; Pulaski v. State* (1964), 24 Wis. (2d) 450, 456, 129 N. W. (2d) 204. The harmless-error rule has been applied for impeachment purposes in other jurisdictions. *People v. Pelkola* (1960), 19 Ill. (2d) 156, 166 N. E. (2d) 54; *Jones v. State* (1914), 97 Neb. 151, 149 N. W. 327.

The defendant makes several other contentions which we believe do not have arguable merit and normally we would not discuss them. However, as this is a criminal case and the defendant has prepared his brief *pro se* we feel obligated to briefly give our reasons to some of the issues. The defendant's claim of right to a hearing on his parole revocation we do not reach because the writ of error is from the conviction and its scope does not encompass the unrelated question of his parole revocation by the state department of public welfare. The oversight of the trial court in failing to instruct that the reading of the information was not to be considered evidence by the jury is not reversible error. The giving of an instruction that persons convicted of a crime (driving after revocation of a driver's license) may be less worthy of belief was not improper because the crime constituted only a

misdemeanor, was not infamous and bore no relationship to credibility. By sec. 885.19, Stats., a person convicted of a crime is a competent witness but the fact of the conviction may be introduced in evidence to affect his credibility. The argument goes to the weight to be given the evidence and is to be made to the jury.

While a new term of court started during the time the defendant was in jail waiting trial, the district attorney did not advise him of his right to counsel and to compel the attendance of witnesses, contrary to sec. 270.125 (4), Stats. But the defendant was then represented by counsel and the breach was harmless. While the trial court in its instructions referred to Erdman who turned state's witness as "an accomplice," there is no basis for referring to him as a codefendant so as to restrict his testimony to himself. Erdman was not on trial with the defendant and it was agreed the term "accomplice" could be used in referring to Erdman. The other objections relied on by the defendant are so devoid of merit as to need no comment.

*By the Court.*—Judgment affirmed.