Roosevelt **FLOURNOY**, Petitioner,

v.

**C. C. PEYTON**, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 68–C–58–D.

United States District Court
W. D. Virginia,
Danville Division.

March 20, 1969.

Roosevelt Flournoy, in pro. per.

Edward J. White, Asst. Atty. Gen., Richmond, Va., for respondent.

---

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court on a petition for a writ of habeas corpus filed in forma pauperis by Roosevelt Flournoy, a state prisoner, pursuant to 28 U.S.C.A. § 2241. The petition was originally filed in the United States District Court for the Eastern District of Virginia and was ordered transferred to this court by order dated November 6, 1969.

Petitioner is serving a sentence of sixty years in the Virginia State Penitentiary pursuant to a judgment of the Circuit Court of Charlotte County of January 3, 1967, wherein the petitioner was convicted of murder. The conviction resulted after a trial by a judge without a jury in which the petitioner, represented by court-appointed counsel, entered a plea of not guilty. An appeal to the Virginia Supreme Court of Appeals resulted in a denial of a writ of error thereby affirming the Circuit Court's decision.

■ The petition for a writ of habeas corpus was filed in this court on November 7, 1968. No petition has been filed in the state courts. However, the claim which the petitioner presents to this court is the same as that which he pressed on direct appeal from his conviction, and thus it has been adjudicated by the highest courts in the state. Once a claim has been adjudicated by the highest courts of a state, that is sufficient to permit a petitioner for habeas corpus to seek federal redress without the necessity of seeking successive rounds in state court litigation. Edmondson v. Warden, Maryland Penitentiary, 335 F.2d 608 (4th Cir. 1964). Thus the petitioner has exhausted his available state remedies within the provisions of 28 U.S.C.A. § 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and as a result, is properly before this court.

Petitioner presents a single claim to this court for consideration, that the introduction into evidence of his confession was in violation of the principles set forth in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966) and hence a violation of his constitutional rights.

The pertinent facts are these. The petitioner was arrested on March 12, 1966, and charged with the murder of his wife. The petitioner was tried on September 8, 1966, by a judge sitting without a jury. At the trial, the Commonwealth Attorney, during the cross examination of the petitioner, offered into evidence a statement which the petitioner had made on March 12, while he was in custody. Over objection which was withdrawn, the court admitted the evidence on the theory that it was not affirmative evidence, but rather was for the purpose of impeachment and thus not violative of the principles set forth in *Miranda*. Apparently the warnings required by the Miranda decision were not given to the petitioner since the interrogation occurred prior to June 13, 1966, the date of the *Miranda* decision, although the trial took place subsequently.

In Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954) the United States Supreme Court stated that a defendant is constitutionally guaranteed the right "* * * to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." However the Court further stated that the defendant could not utilize "* * * perjurious testimony in reliance on the Government's disability to challenge his credibility." at 65, 74 S. Ct. at 356. The *Walder* case "has often been cited as authority by state and federal courts for receiving inadmissible evidence for impeachment." Commonwealth v. Burkett, 211 Pa.Super. 299, 235 A.2d 161, 165 (1967). In United States v. Birrell, 276 F.Supp. 798 (S.D. N.Y. 1967) the court noted that the *Walder* doctrine had been approved by the Court of Appeals of the Second Cir-

cuit according to the factual context of the particular cases considered by it, but that recent decisions have case doubt upon the continuing vitality of the doctrine. The decline of the *Walder* doctrine was attributed to current constitutional developments in another direction. The other direction is manifested in the principles which are inherent in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In the *Miranda* opinion, the Chief Justice made reference to the use of illegally obtained evidence "to impeach" the defendant when he testifies:

> In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and *thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement.* * * * 384 U.S. at 477, 86 S.Ct. at 1629 (Emphasis added.)

In holding that the introduction of illegally obtained statements, in the guise of impeachment, would seriously jeopardize the substantive policies and functions underlying the exclusionary rule and the "guilt by implication" doctrines of *Miranda,* the Superior Court of Pennsylvania said in Commonwealth v. Burkett, 211 Pa.Super. 299, 235 A.2d 161, 165 (1967):

> * * * *Miranda* is based in part on the recognition that such confessions or statements often lack verity. There is no reason to suggest that the statement is any more *truthful* when used for impeachment purposes. A similar reason for exclusion is that any distinctions based on the prosecution's purpose in introducing the evidence are meaningless. 'An incriminating statement is as incriminating when used to impeach credibility as it is when used as direct proof of guilt and no constitutional distinction can legitimately be drawn.'

Thus the rule seems to be developing that if the veracity of the accused testifying in his own behalf is to be attacked by prior inconsistent or contradictory statements made while he was under "in custody" interrogation, the burden will be upon the prosecutor to show that the statements were voluntarily made after the accused had been fully warned of his rights and had effectively waived them in accordance with the *Miranda* standards. See Groshart v. United States, 392 F.2d 172 (9th Cir. 1968); Wheeler v. United States, 382 F.2d 998 (10th Cir. 1967); United States v. Armetta, 378 F.2d 658 (2nd Cir. 1967); People v. Kulis, 18 N.Y.2d 318, 323–324, 274 N.Y.S. 2d 873, 875–876, 221 N.E.2d 541 (1966) (dissenting opinion of Keating, J.); United States v. Birrell, 276 F.Supp. 798 (S.D.N.Y. 1967); State v. Brewton, 422 P.2d 581 (Or.), cert. denied, 387 U.S. 943, 87 S.Ct. 2074, 18 L.Ed.2d 1328 (1967); Commonwealth v. Burkett, 211 Pa.Super. 299, 235 A.2d 161 (1967); Gaertner v. State, 35 Wis.2d 159, 150 N. W.2d 370 (1967). But see United States ex rel. Kulis v. Mancusi, 272 F.Supp. 261 (W.D.N.Y.) aff'd 383 F.2d 405 (2d Cir. 1967).

Assuming, but not deciding that statements obtained in violation of the principles announced in *Miranda,* are prohibited both as direct evidence and for impeachment purposes, we do not think the factual situation of the present case shows any violation of petitioner's constitutional rights. Statements obtained in violation of *Miranda* are suspect in part because they lack verity and are unreliable. The test as to whether a conviction must be voided because the evidence was obtained in violation of *Miranda* would seem to be the same as that enunciated in Jackson v. Denno, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L. Ed.2d 908 (1964) when speaking of involuntary confessions:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law *if his conviction is founded, in whole or in part, upon an involuntary confession, without re-*

*gard for the truth or falsity of the confession * * * and even though* there is ample evidence aside from the confession to support the conviction. (Emphasis added.)

In the present case the petitioner was tried by a judge sitting without a jury. The record reads that after being advised of the right to trial by jury the petitioner "in person, knowingly and voluntary waived a trial by jury." The petitioner in no way alleges that such a waiver was not made, nor that it was not voluntary. Thus the court is not concerned with the difficult problem of determining the means by which a jury reached a verdict and whether such a decision was "founded, in whole or in part" upon the statements of the defendant which were taken in violation of *Miranda.*

The question remains as to basis of the decision rendered by the judge of the trial court. If that decision was affected by the tainted statements, then the conviction must fall as violative of the principles enunciated in *Miranda.* We think the state records clearly show that the tainted statements in no way affected the judge's decision or the petitioner's conviction. At the close of the trial, the judge stated the basis of his decision.

Gentlemen, this, of course, is one of the most serious cases that can come before the Court and I have treated it in that manner. *I have reached the conclusion that this case can be determined by me without reference to any statements made by the accused to the officers and I will, therefore, for the purposes of my decision in this case, and do disregard any statements he made to the officer except the statement he made voluntarily and under circumstances that was not under the influence of the Miranda case.* The case being considered on the Commonwealth's evidence, as made out in chief, and *considering the defendant's testimony up to the point of cross-ex-*

*amination,* in my judgment and considering all the authorities * *. * makes out a case of first degree murder. I realize that is a decision that must be reached reluctantly and giving the accused every benefit of doubt.

The decision continues and twice more the trial judge states that the tainted statements in no way entered into his decision:

Considering the evidence of the Commonwealth in chief and the testimony of the accused *up to the point of cross-examination, and striking the rest of it from the record as far as my decision goes.* * * *

I may say, so the record will fully show, *that I am completely disregarding all of the testimony in relation to what could be considered a confession, although, I think even under the Miranda case it would be proper to use it for impeachment purposes but I am disregarding it and I am not even considering it for that purpose.*

It is clear from the above that the tainted statements were not used "in whole or in part" by the judge in arriving at his decision. In essence the judge has treated the statements as inadmissible evidence to be disregarded in the decision-making process. Although the method for excluding the evidence lacked the formal character of a jury trial or even the usual procedures of a trial without a jury, the judge performed his required role in Virginia of determining the admissibility of the statements. See Mathews v. Commonwealth, 207 Va. 915, 153 S.E.2d 238 (1967), Reid v. Commonwealth, 206 Va. 464, 144 S.E.2d 310 (1965). By his decision, the judge, in effect found that the statements were inadmissible and thus excluded them. The petitioner's conviction was in no way the product of the tainted statements. Thus we find no violation of any constitutional right and can grant petitioner no relief based on his claim.

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to relief based on his claim and it is accordingly adjudged and ordered that the writ be denied and the petition dismissed.

The clerk is directed to send a copy of this opinion and judgment to the petitioner and to the respondent.