STATE EX REL. SHOCK, Respondent, V. DEPARTMENT OF HEALTH & SOCIAL SERVICES, Appellant.

*No. 75-433. Argued March 29, 1977.—Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 55.)

For the appellant there was a brief by *Bronson C. La Follette,* attorney general, and *Gary L. Carlson,* assistant attorney general, and oral argument by *Pamela Magee,* assistant attorney general.

For the respondent the cause was argued by *Jack E. Schairer,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

BEILFUSS, C. J. Two issues are presented: (1) Does the trial court have legal authority to grant bail to a petitioner pending certiorari review of his probation revocation? (2) Did the trial court erroneously reverse and set aside the H&SS revocation order?

On January 28, 1972, the petitioner, Frederick A. Shock, was found guilty by a jury and convicted of the crime of arson. He was sentenced for a period not to exceed five years. On the same day he entered pleas of guilty to two additional charges. The pleas were accepted and he was found guilty and sentenced to not to exceed five years for the crime of endangering safety by conduct regardless of life, and one year in the county jail for carrying a concealed weapon, sentences to be served concurrently. The execution of all three sentences was stayed and he was placed on probation for a period of three years. He was required to spend the first thirty days in the House of Correction and undergo antabuse treatment for alcoholism.

On February 2, 1972, Shock signed a standard probation agreement. The agreement provided and he understood he was not to leave the state without the consent of his probation agent and to keep the agent informed as to his whereabouts at all times.

He was released from the House of Correction on February 20th and directed to report to another institution for the antabuse treatment. He decided he didn't need the antabuse treatment and because of family difficulties he could not conform his conduct to the required standards of probation, and absconded. His wife had apparently been associating with another man. All three of the crimes he was convicted of were motivated by this family difficulty.

He left the state on or about February 22, 1972—less than thirty days after conviction. He went to South Dakota for a while and then to Florida. He changed his

name to Fred Miller and applied for a new social security number for the purpose of concealing his identity and to avoid apprehension.

In the fall of 1974 he returned to St. Paul, Minnesota because of the illness of his father. He was apprehended there to be returned to Wisconsin. He was released on ten percent cash of $2,500 bail bond and again absconded and returned to Florida. On January 12, 1975, almost three years after his original flight, he was apprehended in Florida. He resisted extradition and returned to Wisconsin in April of 1975.

A probation revocation hearing was held on May 12, 1975. At the hearing it was shown he had not engaged in any criminal activity while a fugitive, and that on two occasions had called the trial judge who sentenced him. The judge advised him to return but he refused to do so. The hearing examiner recommended that probation not be revoked because of his finding that Shock "substantially complied with the conditions of his probation." On May 29, 1975, the secretary of H&SS rejected the hearing examiner's recommendation and revoked Shock's probation on the ground "that failure to revoke would depreciate the seriousness of the violation."

Shock then commenced this certiorari proceeding in the sentencing court. The writ issued June 4, 1975, and on June 9, 1975 Shock was admitted to bail pending a decision on the writ of certiorari. On July 3, 1975, after a hearing, the trial court set aside the order of revocation and extended Shock's probation for an additional two years. H&SS appealed.

H&SS contends no authority exists for granting bail pending certiorari review of probation revocation.

Bail was extended to Shock pending certiorari review in the trial court. He was released and bail terminated by virtue of the hearing and determination of the issues by the court. The bail issue is moot as to this defendant.

Nothing this court could do at this stage would affect Shock's bail one way or the other. However, because the problem is likely to rise again, we do consider it and will discuss it briefly.

We are not here concerned with the right to bail before conviction. Probation revocation is a proceeding after conviction.

Sec. 969.01 (2), Stats.,[1] provides for bail after conviction. Under this section bail may be allowed after conviction but before sentence or probation; upon an appeal by the trial judge, the supreme court or justice thereof; and shall be allowed upon appeal after conviction of a misdemeanor. No provision is made for bail pending a review of a probation or parole revocation.

In *Gaertner v. State,* 35 Wis.2d 159, 164–65, 150 N.W. 2d 370 (1967), this court stated:

"The defendant contends he was entitled to be released on bail before trial even though he was a parolee at the time. The basic principle underlying the right to reasonable bail is the presumption of innocence and any denial of personal liberty must meet the test of due process. The right to reasonable bail was recently considered in *Whitty v. State* (1967), 34 Wis. (2d) 278, 149 N.W. (2d) 557. If defendant had not been on parole at the time of his arrest, he would have been entitled to bail upon his arrest. However, because he was also held upon an order of the department of public welfare as a parole violator he was not entitled to bail."

The same considerations apply to probation. There has been no timely appeal from the conviction or the

[1] "969.01 *Right to bail.* . . . (2) *After Conviction.* (a) Release pursuant to s. 969.02 or 969.03 may be allowed in the discretion of the trial court after conviction and prior to sentencing or the granting of probation.

"(b) In misdemeanors, bail shall be allowed upon appeal.

"(c) In felonies, bail may be allowed upon appeal in the discretion of the trial court."

sentence and it is therefore finalized (except for possible postconviction relief under sec. 974.06, Stats.).

We conclude that neither under the present statute nor case law is a revoked probationer entitled to bail pending a review of probation revocation.[2]

H&SS contends it was error to reverse and set aside the order of the secretary of the H&SS Department which revoked Shock's probation.

Review of probation revocation is by certiorari to the court of conviction.

In *Snajder v. State,* 74 Wis.2d 303, 310, 246 N.W.2d 665 (1976), quoting *State v. Goulette,* 65 Wis.2d 207, 215, 222 N.W.2d 622 (1974), we stated the standard of review on certiorari is:

" '(1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.' "

This court adopted the American Bar Association *Standards Relating to Probation* in *State ex rel. Plotkin v. H&SS Department,* 63 Wis.2d 535, 544–45, 217 N.W.2d 641 (1974).[3]

[2] We deem the question of bail after probation revocation to be primarily a matter for legislative concern.

[3] " '5.1 *Grounds for and alternatives to probation revocation.*

" '(a) Violation of a condition is both a necessary and a sufficient ground for the revocation of probation. Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that:

" '(i) confinement is necessary to protect the public from further criminal activity by the offender; or

In this case the hearing examiner recommended to the department that probation not be revoked because Shock had been employed, self-sustaining and not involved in any known criminal activities. He concluded there had been substantial compliance with the probation agreement.

The secretary, in considering the matter, stated in part:

"[R]epeated and willful refusal to comply with the terms of his conditional release are not seen as 'substantial compliance' on the part of Mr. Shock. There can be no doubt that failure to revoke would depreciate the seriousness of the violation."

Shock challenged the secretary's order of revocation and the reasons therefor as being arbitrary and capricious and representing his will rather than judgment.

In recent cases we have recognized that absconding or not advising the probation agent of whereabouts is a serious probation violation that often goes to the heart of probation supervision. If the agent does not know

---

" '(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

" '(iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

" '(b) It would be appropriate for standards to be formulated as a guide to probation departments and courts in processing the violation of conditions. In any event, the following intermediate steps should be considered in every case as possible alternatives to revocation:

" '(i) a review of the conditions, followed by changes where necessary or desirable;

" '(ii) a formal or informal conference with the probationer to re-emphasize the necessity of compliance with the conditions;

" '(iii) a formal or informal warning that further violations could result in revocation.' "

where the probationer is there can hardly be any supervision.[4]

In this case the record reveals that Shock was convicted of three crimes—two of them serious felonies. Within thirty days after conviction, and just a day or two after release from the House of Correction, Shock left the state without permission, knowing he had to have permission and believing permission would be denied. He refused court ordered antabuse treatment—he said he didn't need it. He stated that the reason he left was because of his wife's association with another man and that if he stayed in the locality additional trouble would develop. The paramour died quite some time before Shock's involuntary return, a fact known to him. He changed his name and social security number to avoid identity and apprehension. He "jumped" bond upon his first apprehension. He refused to heed the admonition of the trial judge to return after he called the judge. He made no effort to make any restitution of the damages caused by the fire related to his arson conviction and was gone about three years.

We believe these facts amply justify the decision of the secretary that "failure to revoke would depreciate the seriousness of the violation," and clearly do not support a conclusion that the order of revocation was based upon arbitrary or capricious consideration and represented the will rather than the judgment of the department acting through its secretary.

It is not a question of whether the trial court's disposition is sustainable as an original disposition. The trial court and this court are limited to the arbitrary and capricious standards of review set forth above.

[4] *State ex rel. Solie v. Schmidt*, 73 Wis.2d 76, 242 N.W.2d 244 (1976); *State ex rel. Cutler v. Schmidt*, 73 Wis.2d 620, 244 N.W.2d 230 (1976).

*By the Court.*—The order and judgment are reversed; the revocation order of the H&SS Department is reinstated with directions to credit the petitioner Shock with all time spent in the county jail on the sentence imposed.