STATE of Minnesota, Respondent,

v.

**John FRITSCHE, Appellant.**

No. C4-86-2153.

Court of Appeals of Minnesota.

March 10, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James R. Olson, Brown Co. Atty., New Ulm, for respondent.

C. Paul Jones, Public Defender, James M. Burseth, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ., with oral argument waived.

**OPINION**

CRIPPEN, Judge.

This appeal questions whether the trial court properly revoked its stay of imposition of a sentence and, if so, whether its subsequent stay of an executed sentence could extend the term of court authority over appellant beyond the statutory five-year maximum sentence for his offense. We reverse on both questions.

## FACTS

In March 1981, appellant violated the state statute on aggravated criminal property damage (over $300), Minn.Stat. § 609.-595, subd. 1(3) (1980). The statute permitted a sentence of imprisonment for not more than five years.

Appellant pleaded guilty when charged with the violation and the trial court stayed imposition of a sentence, placing appellant under probationary supervision on conditions including payment of $26,500 restitution.

The trial court initially stayed imposition of a sentence for "at least five years," explaining that a five-year stay would not give appellant "an adequate handle on restitution." The court explained:

I intend that disposition as a device, because I intend to revoke it before the end and to impose sentence, and then stay execution, if you have not completed your restitution, which will extend it another five years. That means you're facing a total of 10 years.

The court repeated:

I am using a stay of imposition as a device to, in effect, double the probationary period.

During the original sentencing, the court also commented on Minn.Stat. § 609.13, subd. 1(2) (1980), which deems a conviction to be for a misdemeanor where following stayed imposition of a sentence the defendant is eventually discharged without a sentence. The court explained to the defendant, "that's not going to happen in your case."

Nearly five years later, in September 1986, appellant was ordered to appear and show cause why his probation should not be revoked based on a report that he had failed to complete payment of restitution. No other claims of misconduct were reported to the court.

At the revocation hearing, on September 22, 1986, it was shown that appellant had paid almost $3000 in restitution but that he had failed to make scheduled $75 monthly payments for about half of the months during the 30–month period after he obtained employment in July 1983. During this period, appellant was employed as a cook at $4.25 per hour.

The State did not claim at the hearing that appellant had failed without excuse to make restitution payments. When the court asked whether appellant had failed to pay when he could have, appellant told the court:

I am saying there were times that if I could have paid, I mean I would have. But, there were times when I didn't have the money on hand, and that's why there weren't any payments made. It wasn't like I decided I am not going to pay this month. Those times didn't arise. I didn't figure "I am not going to pay this month. I will just keep it."

The trial court commented that it understood appellant's description of his financial inability to make some payments, and observed that appellant hadn't done "all that bad." Nevertheless, without further evidence, the court found that appellant "could have done more and chose not to."

During the revocation hearing the court noted that an appellate decision on sentencing prevented automatic extension of probation as had been intended by the trial court in 1981. The court explained, however:

I'm inclined to feel that the failure to pay in accordance with the order at a time when you could would give me grounds to do that at this point, which would, so to speak, finesse the legal issue that I just mentioned.

At the conclusion of the revocation hearing the trial court found that appellant had violated the terms of his probation regarding restitution. The court imposed a one year and one day sentence but stayed its execution for up to five additional years on conditions of restitution payments and good behavior.

Five weeks later, a Department of Corrections supervisor reported to the trial court that, according to advice given the department by the attorney general's of-

fice, "a stay of execution and/or stay of imposition should not total more than the maximum statutory sentence," an opinion based on the decision of this court in *State v. Arnold,* 371 N.W.2d 253 (Minn.Ct.App. 1985). In *Arnold* we held that there is no statutory authority to continue probation beyond the statutory maximum sentence for a crime. The trial judge responded to the advice by letter, insisting that *Arnold* was significant only for its second holding, the decision to reverse the trial court's second revocation proceedings because they were conducted after the probation period had expired. The court added:

> I decline to accept the advice of the Attorney General in this matter. I request that Corrections continue supervision of Defendant on his present probation to insure that he does what he can toward making the restitution that has been required of him.

## ISSUES

Did the trial court err in (1) continuing probationary supervision beyond the maximum statutory term, and (2) in finding grounds to revoke the 1981 stay of imposition of a sentence?

## ANALYSIS

The court's sentencing "device" rested on conjecture unsupported by evidence of record, and disregarded controlling statutory law. This record does not show judicial action under the rule of law.

### I.

Minn.Stat. § 609.135 (1984) governs both stay of execution of a sentence and stay of imposing any sentence. As to both forms of stay, the statute declares that the maximum period of stay is "the maximum period for which the sentence of imprisonment might have been imposed." *Id.* § 609.135, subd. 2(1).

The trial court proceeded on the contention that section 609.135, subd. 2(1), does not preclude the device of coupling stayed imposition with stay of execution to double the maximum length of stay.

In a decision discussed by the trial court at and after the revocation hearing, we held that under Minn.Stat. § 609.135, subd. 2(1), the trial court lacks authority "to continue appellant's probation beyond the statutory maximum sentence for the offense." *Arnold,* 371 N.W.2d at 255.

In *Arnold,* the trial court stayed imposing a sentence in 1977 and found grounds for revocation five years later, shortly before the stay was to expire. The trial court continued the stay and the probationary period for one year, and we declared that decision unlawful under the statute. *Arnold* did not involve relabeling the probationary arrangement a stay of execution, as was done by the trial court here, and observations here by the trial judge imply that this relabeling successfully evades the evident meaning of the law. We conclude this distinction is specious.

■ A placement on probation, with or without supervision, is permitted with any stay of imposition or execution of sentence. Minn.Stat. § 609.135, subd. 1. *Arnold* did not address one form of stay or another, but the whole subject of probationary placements. Those placements may not be extended beyond the statutory maximum sentence.

We find nothing in the statutory scheme justifying one rule of law for extensions of stays of one variety and another rule for extensions which combine different types of stays. It is true, of course, that upon revocation after stayed imposition of sentencing, options for the court include a continued stay of imposition and a stay of execution (within the time framework permitted by statute). Minn.Stat. § 609.14, subd. 3(1). The existence of that option does nothing to legitimate the pretext of using another name to extend probationary supervision beyond the term permitted by law.

As noted, the decision in *Arnold* was premised on the statute dealing with the maximum term of stays. *See* Minn.Stat. § 609.135, subd. 2(1). The State contends that the language of this clause must be

read with words in clause (4) of the same subdivision which require that a defendant be discharged at the expiration of a stay "unless the stay has been revoked." Minn. Stat. § 609.135, subd. 2(4). We were cognizant of this provision in deciding *Arnold,* where an unlawful extension of probation had occurred based on a finding of grounds for revocation. *Arnold,* 371 N.W.2d at 254. Seeking as we must to reconcile the two clauses without disregarding either, we conclude that clause (4) deals with revocation followed by an executed sentence. *See* Minn.Stat. § 645.26, subd. 1. While our statutes permit revocation followed by a further stay, our view of this clause is compatible with a more common view that the occurrence of "revocation" suggests the execution of a sentence of incarceration. *See State v. Austin,* 295 N.W.2d 246, 250–51, 253 (Minn.1980).

## II.

 The trial court can revoke a stay based on violation of conditions of probation. Minn.Stat. § 609.14, subds. 1 and 3 (1986). To justify revocation, the court must find that violations are intentional. *Austin,* 295 N.W.2d at 250. We will reverse a trial court finding on grounds for revocation only in the case of a clear abuse of the trial court's broad discretion in assessing the evidence. *Id.* at 249–250.

 Here the court found that appellant failed to make required payments that he "could have" made. This implies that appellant intentionally failed to make payments. Missed payments justify revocation only in cases of willful failure to pay or failure to attempt to pay. *Bearden v. Georgia,* 461 U.S. 660, 672, 103 S.Ct. 2064, 2072, 76 L.Ed.2d 221 (1983) ("[A] sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation * * *.").

 The trial court finding that appellant could have made additional payments is unsupported by the record. Significant-

ly, it is evident that the trial court elected to revoke five years before the action was taken regardless of the best effort of appellant to fulfill his restitution obligation.

Appellant's verbal report to the court suggested he was unable to pay more than he paid, and this position was not refuted. The State neither claimed nor showed that appellant willfully missed payments. The proceedings were conducted without the appearance of the supervising probation officer. Later, the state corrections department reported the view of its probation agent that appellant had done his best in making restitution.

 We also note that the hearing notice given to appellant made no accusation of a willful violation, stating only that appellant failed to complete payment of restitution. Specific assertions of violations are required by law. Minn.R.Crim.P. 27.04, subd. 1(1) and (2). *See* Minn.Stat. § 609.14, subd. 2. In addition, appellant was not advised at the hearing of his right to an evidentiary hearing on the accusation of willful nonpayment. Minn.R.Crim.P. 27.04, subd. 2(1).

The decision to revoke must be based on sound judgment and not just the will of the trial judge. *Austin,* 295 N.W.2d at 251. Nothing in this record dispells the appearance of an unjustified revocation.

## DECISION

Stay of appellant's sentencing was erroneously revoked, and the trial court further erred by extending probationary supervision for a period of up to twice the maximum sentence for appellant's offense. The court's order of commitment is reversed and appellant is discharged from the sentencing authority of the court.

Reversed.