*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0944**

State of Minnesota,
Respondent,

vs.

Lamar King,
Appellant.

**Filed January 26, 2015
Affirmed in part and remanded
Halbrooks, Judge**

St. Louis County District Court
File No. 69VI-CR-12-1161

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Rubin, St. Louis County Attorney, Leah A. Stauber, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

In this probation-revocation appeal, appellant argues that (1) his guilty plea was involuntary because the district court imposed a sentence that violated the plea agreement

and (2) the district court abused its discretion when it revoked appellant's probation and executed his sentence after determining that appellant intentionally and inexcusably violated his probation and that the need for confinement outweighs the policies favoring probation. Because we conclude that the district court acted within its discretion by revoking appellant's probation and executing his sentence, we affirm in part. But because we conclude that appellant's guilty plea was involuntary, we remand to the district court for plea withdrawal or sentence modification.

## FACTS

On July 17, 2012, appellant Lamar King hit two victims in the face with an open hand. Police officers observed that both victims had red marks on their faces, one victim had red marks on her upper chest, and the other victim's left eye was swollen. The state charged King with two counts of fifth-degree assault, which were enhanced to the felony level because King had two prior qualified domestic violence-related convictions within three years.

On September 13, 2013, King pleaded guilty to both counts of felony fifth-degree assault. The parties entered into a plea agreement that stated that (1) the sentences would run consecutively, (2) the sentence for count one would be a bottom-of-the-box sentence, and (3) the parties would recommend a downward dispositional departure. Based on King's criminal-history score, a bottom-of-the-box sentence for count one was 26 months. On October 14, 2013, the district court sentenced King to 30 months for count one—a middle-of-the-box sentence. The district court did not expressly reject the plea agreement, and neither party noted the discrepancy between the agreed-upon 26-month

2

sentence and the imposed 30-month sentence. The district court also imposed a consecutive one-year-and-one-day sentence for count two and stayed both sentences for a period of three years, placing King on probation. The stayed sentences constituted a downward dispositional departure. The district court based the departure on its finding that King was amenable to treatment and probation and noted that the state recommended a downward departure. King's conditions of probation required that he (1) not use or possess alcohol or drugs, (2) submit to random testing, (3) not possess firearms or dangerous weapons, and (4) remain law-abiding, among other conditions.

On January 8, 2014, King's probation officer filed a recommendation to vacate the stay of execution on King's sentence because he had violated the conditions of his probation. The probation officer's report stated that, on January 7, King possessed alcohol, admitted to consuming alcohol, and failed to submit to random testing. On February 11, 2014, King's probation officer again filed a recommendation to vacate the stay of execution because King had violated the conditions of his probation by being in possession of a firearm on February 7 and by failing to remain law-abiding because he was charged with being a felon in possession of a firearm and carrying a weapon without a permit.

The district court held a contested probation-violation hearing. Witnesses gave conflicting testimony regarding whether King used alcohol or refused to submit to testing on January 7, 2014. The witnesses also gave conflicting testimony regarding whether King was in possession of a firearm on February 7, 2014. The district court found that King violated his probation by consuming alcohol and refusing to submit to random

testing on January 7, 2014.  The district court also found that King violated his probation by possessing a firearm on February 7, 2014.  The district court found that the violations were intentional and inexcusable and that the need for confinement outweighs the policies favoring probation.

The district court revoked the stay of execution on both counts and committed King to the commissioner of corrections for a period of 30 months, with credit for 262 days, and for a consecutive period of one year and one day.  This appeal follows.

### D E C I S I O N

### I.

King argues that his guilty plea was not voluntary because it was induced by an unfulfilled promise, and therefore he is entitled to plea withdrawal or sentence modification.  Courts must allow a defendant to withdraw a guilty plea if withdrawal is necessary to correct a manifest injustice.  Minn. R. Crim. P. 15.05, subd. 1.  A manifest injustice exists when a guilty plea is not valid.  *State v. Theis*, 742 N.W.2d 643, 650 (Minn. 2007).  A plea is invalid when it is not accurate, intelligent, or voluntary.  *Id.*  "The voluntariness requirement insures that a guilty plea is not entered because of any improper pressures or inducements."  *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted).  "To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement."  *State v. Raleigh*, 778 N.W.2d 90, 96 (Minn. 2010).  We review the validity of a guilty plea de novo.  *Id.* at 94.

4

"[A] district court may, in its discretion, refuse to accept a plea agreement and is not bound by a plea agreement as to any sentence to be imposed." *Johnson v. State*, 641 N.W.2d 912, 918 (Minn. 2002). But the Minnesota Rules of Criminal Procedure provide that if a district court rejects a plea agreement, "it must advise the parties in open court and then call upon the defendant to either affirm or withdraw the plea." Minn. R. Crim. P. 15.04, subd. 3(1). The district court must also make sure that the defendant understands that "[i]f the court does not approve the plea agreement, the defendant has an absolute right to withdraw the guilty plea and have a trial." Minn. R. Crim. P. 15.01, subd. 1(6)(n).

"[A] defendant who pleads guilty in exchange for an *agreed-upon* sentence faces different consequences than a defendant who exchanges a guilty plea for the state's *recommendation* of a certain sentence." *Perkins v. State*, 559 N.W.2d 678, 687 (Minn. 1997). If the district court rejects an agreed-upon sentence, "the defendant is entitled to withdraw [the] plea." *State v. DeZeler*, 427 N.W.2d 231, 234 (Minn. 1988). An agreed-upon sentence is a promise, and if that promise induces a guilty plea, the district court has "no discretion to reject without tendering to appellant his right to withdraw that plea and stand trial." *State v. Kunshier*, 410 N.W.2d 377, 379-80 (Minn. App. 1987), *review denied* (Minn. Oct. 21, 1987). But if the district court rejects a mere recommendation for a certain sentence, then the defendant is not entitled to plea withdrawal, "unless the defendant can establish either (a) that the defendant mistakenly believed he or she could withdraw the plea if the sentencing court rejected the recommendation, or (b) that there is some other ground for withdrawal." *Perkins*, 559 N.W.2d at 687.

Here, the plea agreement stated:

> In exchange for my agreement to plead guilty to both counts of felony [fifth-degree] assault and my agreement that both sentences shall run consecutive, the prosecutor agrees to recommend a downward dispositional departure, agrees to a "bottom of the box" Minnesota Sentencing Guideline Sentence on the first of these convictions, and that I may be released from custody upon my completion of a Chemical Dependency Assessment . . . .

And, at the plea hearing, King's counsel stated that, pursuant to the plea agreement, the prosecutor was "agreeing to recommend, along with us, a downward dispositional departure on that matter. She agrees further to a bottom-of-the-box Minnesota Sentencing Guideline cell sentence on the first of the two convictions." We understand this to mean that the parties agreed to a bottom-of-the-box sentence and that the state agreed to recommend a downward dispositional departure. King's counsel also ensured that King understood that if "the Judge doesn't accept the agreement as offered here by the parties, you have your right to withdraw the plea of guilty and have a trial."

King argues that his guilty plea rested on an unfulfilled promise of a "bottom-of-the-box" sentence for count one. And because the promise induced the plea, the plea was not voluntary. The state does not dispute the assertion that the bottom-of-the-box sentence was a promise and concedes that King is entitled to sentence modification.

During the plea hearing, the parties agreed that a 26-month sentence on count one was appropriate according to the sentencing guidelines. The district court deferred acceptance or rejection of the plea pending receipt of the presentence investigation (PSI). Two PSI reports were filed. The first one recommended a 30-month stayed sentence if

6

the district court decided to depart from the presumptive guidelines sentence, but the second report recommended a 26-month stayed sentence if the district court chose to depart.

At the sentencing hearing, the district court committed King to the custody of the commissioner of corrections for a period of 30 months for count one, stayed for three years. King did not object to the 30-month sentence or move to withdraw his plea based on the change in the length of the sentence. Nor did the district court give King an opportunity to withdraw his guilty plea. King did object when the district court sentenced him to 33 months for count two, instead of the agreed-upon sentence of one year and one day. In response, the district court stated, "I'm just reading from the PSI, so let me just go back and see what the plea agreement . . . scratch that sentence that I just imposed, and we will start over again with Count 2."

The language in the plea agreement indicates that the parties agreed to a bottom-of-the-box sentence and to recommend a downward dispositional departure. In addition, the record indicates that the district court intended to abide by the plea agreement but misspoke when it imposed a 30-month sentence instead of the agreed-upon 26-month sentence. We conclude that the 26-month bottom-of-the-box sentence was a promise, and because King's plea was induced by the unfulfilled promise, his plea was involuntary.

In cases where appellants' pleas have been found to be involuntary because of unfulfilled promises, the Minnesota Supreme Court has remanded either to allow appellants to withdraw their pleas or to allow the district court to modify the sentences to

comply with the agreed-upon sentences. *See State v. Wukawitz*, 662 N.W.2d 517, 527 (Minn. 2003) (holding that plea withdrawal should be the first option, but if the state would be unduly prejudiced by withdrawal, the district court may modify the sentence); *State v. Jumping Eagle*, 620 N.W.2d 42, 45 (Minn. 2000) (remanding for the district court to either allow appellant to withdraw his plea or to modify his sentence to the agreed-upon sentence); *State v. Garcia*, 582 N.W.2d 879, 882 (Minn. 1998) (holding that appellant must be allowed to withdraw from the plea agreement if he so chooses, but if he does not so choose, the sentence should be amended to not exceed the agreed-upon length of the sentence). We therefore remand for plea withdrawal or sentence modification.

## II.

King argues that the district court abused its discretion when it revoked his probation and executed his sentence because it erred by finding that (1) the state proved by clear and convincing evidence that King intentionally and inexcusably violated his probation and (2) the need for confinement outweighs the policies favoring probation. We address this argument because of the possibility that the district court may modify appellant's sentence on remand.

When a person on probation violates a condition of probation, the district court may continue probation, impose intermediate sanctions, or revoke probation and execute the stayed sentence. Minn. Stat. § 609.14, subd. 3(2) (2012). "The [district] court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). But the decision to revoke probation "cannot be a

8

reflexive reaction to an accumulation of technical violations [and] requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotation omitted). Before revoking probation, the district court must follow the three-factor analysis adopted in *Austin*: (1) specify which condition was violated, (2) find the violation to be intentional or inexcusable, and (3) find that the "need for confinement outweighs the policies favoring probation." *Id.* at 250. In making the three *Austin* findings, the district court "must seek to convey [its] substantive reasons for revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005).

## A. Clear and Convincing Evidence of Violations

King argues that the district court abused its discretion by determining that he intentionally and inexcusably violated the terms of his probation because the state did not prove by clear and convincing evidence that King violated his terms by consuming alcohol, failing to submit to random testing, and possessing a firearm. To support a revocation of probation, the district court must find clear and convincing evidence that King violated a condition of his probation. Minn. R. Crim. P. 27.04, subd. 2(1)(c)b. "The clear and convincing evidence standard is met when the truth of the fact to be proven is highly probable." *Roby v. State*, 808 N.W.2d 20, 26 (Minn. 2011) (quotations omitted).

The district court held a contested probation-violation hearing and heard testimony from King, his probation officer, the chief of police for the city of Eveleth, a state

9

trooper, and King's girlfriend regarding the alleged violations of his probation. The witnesses gave conflicting testimony regarding whether the violations occurred.

With respect to the allegation that King violated his probation by possessing and consuming alcohol on January 7, 2014, King's probation officer testified that he responded to a call that King was holding his girlfriend at gunpoint in a motel room. The probation officer testified that King told him that he had been drinking. The probation officer also testified that he observed empty beer containers in the motel room. King's girlfriend testified that the beer belonged to her, she did not see King consume any alcohol, and he was only there for five or ten minutes before the police arrived. King testified that he did not consume any alcohol on January 7. The district court found that the probation officer's testimony was more credible than King's testimony and found that King violated his probation by consuming alcohol on January 7, 2014.

Concerning the allegation that King violated his probation by refusing to submit to random testing on January 7, 2014, King's probation officer testified that he made two attempts to obtain a preliminary breath test (PBT) sample from King but that King obstructed the tube with his tongue. King testified that he did not block the tube with his tongue and that he blew into the PBT device. The district court found that the "credibility of the evidence would indicate that [King] was not participating properly" with the PBT device and found that King violated his probation by refusing to submit to the PBT.

Concerning the allegation that King violated his probation because he possessed a firearm and failed to remain law-abiding, King's probation officer testified that King was

10

charged with being a felon in possession of a firearm arising out of an arrest on February 7, 2014. The chief of police for the city of Eveleth testified that he responded to a call of a fight in progress and a male with a gun on February 7, and while stopping a vehicle related to the call, the chief performed a quick pat-down of King and did not discover a firearm on his person. But he testified that an officer assisting with the call performed a more thorough search of King that revealed "a loaded, cocked .22 revolver." The chief identified the piece of evidence marked as exhibit 1 as the "gun that was handed to me that was removed from Mr. King's person." A state trooper who assisted with the call testified that he held King while another officer searched him and he watched the officer's hand come out of King's jacket pocket with a gun. The trooper identified exhibit 1 as "the handgun that was recovered from Mr. King's person." King testified that he did not have a weapon on him on February 7, stating that the officer "allegedly removed a gun from my possession, which I didn't have in my possession at the time." And King stated that he did not recognize the weapon marked as exhibit 1. The district court found that "it's clear from the evidence" that the state trooper's testimony was more credible than King's testimony and found that King violated his probation by being in possession of a firearm on February 7, 2014.

For each violation, the district court weighed the credibility of the testimony and found that the state proved by clear and convincing evidence that King consumed alcohol, refused to submit to random testing, and possessed a firearm. The district court also found that the violations were intentional and inexcusable.

We conclude that the district court did not abuse its discretion in finding that there was clear and convincing evidence that King intentionally and inexcusably violated the conditions of his probation. "[O]nce an intentional or inexcusable violation has been found, the [district] court must proceed to an evaluation of whether the need for confinement outweighs the policies favoring probation. This process prevents courts from reflexively revoking probation when it is established that a defendant has violated a condition of probation." *Modtland*, 695 N.W.2d at 608.

**B.     Need for Confinement Outweighs Policies Favoring Probation**

King argues that the district court abused its discretion by finding that the need for confinement outweighs the policies favoring probation. The third *Austin* factor requires the district court to "balance the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety, and base [its] decisions on sound judgment and not just [its] will." *Id.* at 606-07 (quotation omitted). A district court may find that the third *Austin* factor is satisfied if any one of the following subfactors is present:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Austin*, 295 N.W.2d at 251.

King argues that the district court abused its discretion by revoking his probation because this was King's first probation violation. But the state correctly notes that

12

King's probation officer filed two violation reports—one on January 8, 2014, and the second on February 11, 2014—alleging four violations of his probation.

King also argues that the district court improperly relied on its contact with King in prior cases to determine that the need for confinement outweighs the policies favoring probation. The district court must base its assessment of whether revocation is proper under the third *Austin* factor on the original offense and the intervening conduct of the defendant. *Id.* Here, the district court stated that it "has been more than lenient over the years in giving [King] opportunities to remain on probation and make something of it." But the district court immediately explained, "[t]hat, of course, has nothing to do with the decision . . . in this particular case." The district court went on to state that "in this circumstance, you were also given an opportunity . . . to show to this Court that you were trying to make some changes and stay out of involvement in matters such as this, in consuming alcohol, and, more seriously, possessing a firearm while on probation." The district court found that "the need for confinement outweighs any policies favoring continuing you on probation in this file, and that it would unduly depreciate the seriousness of the violation of probation if not revoked."

The record demonstrates that King violated his probation in multiple ways in a relatively short amount of time. Because of the particular seriousness of the violations of failing to remain law-abiding and possessing a firearm, the record supports the district court's finding that it would unduly depreciate the seriousness of the violations if the district court did not revoke probation. Therefore, the record supports the district court's finding that the need for confinement outweighs the policies favoring probation. Because

13

the district court made sufficient findings under *Austin* and the record supports those findings, we conclude that the district court did not abuse its discretion in revoking King's probation and affirm the district court's revocation of King's probation.

**Affirmed in part and remanded.**