STATE of Minnesota, Respondent,

v.

Jerry Dean AUSTIN, Appellant.

No. 49750.

Supreme Court of Minnesota.

July 3, 1980.

C. Paul Jones, Public Defender, and Kathy A. King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Alan L. Mitchell, County Atty., Duluth, Mark S. Rubin, Asst. County Atty., Virginia, for respondent.

Heard before OTIS, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

On October 19, 1978, the St. Louis County District Court revoked appellant's probation and reinstated his concurrent sentences of 0 to 20 years for burglary and 1 to 5 years for aggravated assault which were to be served in the St. Cloud Reformatory. The alleged grounds supporting revocation were that the appellant "failed to comply with stipulated conditions of release with respect to treatment at Eden Home Facility." Appellant claims that the trial court erred in revoking his probation because he substantially complied with what he understood to be his obligations. He therefore appeals the revocation order. We affirm.

The issues raised on appeal are:

I.   Whether the trial court clearly abused its discretion by revoking the appellant's probation.

II.   Whether the appellant was given adequate notice of the conditions of his probation and explicit enough instructions by his probation officer.

III.   Whether the appellant was denied adequate notice of the alleged grounds supporting revocation.

On December 8, 1977, pursuant to a plea agreement, appellant pled guilty to burglary and aggravated assault charges stemming from an October 7, 1977, incident. Thereafter, the court sentenced him to concurrent terms of 0 to 20 years for burglary and 1 to 5 years for aggravated assault. The sentence was stayed and appellant placed on probation for 6 years. There was testimony that the appellant received a written copy of standard conditions of probation at that time.

On June 9, 1978, a probation revocation hearing was held before the same judge who originally sentenced appellant. The appellant admitted leaving the Eden Day Care Center, a drug treatment program, without the permission of the staff or his probation officer in violation of the probation order. The court found that the appellant had violated the conditions of his probation and revoked the probation. Once more the judge stayed execution of the sentence and placed the appellant on probation for another 6 years. The court orally informed the appellant that the conditions of his probation were: 1) that he spend the first 90 days in the St. Louis County Jail with credit for past jail time; 2) that he obey all the laws of the land and rules set out by the probation officer; 3) that he refrain from the use of intoxicants or controlled substances; and 4) that the Arrowhead Regional Corrections authorities screen him for help with his chemical dependency problem.

At the end of the appellant's 90-day jail sentence, Frank Kampa, the appellant's

probation officer, made arrangements for the appellant to be considered for admission to Eden Residential Program (Eden House) in Minneapolis. Mr. Kampa testified that before the appellant went to Minneapolis, he told him that "if for any reason he did not enter the program, he should return to the St. Louis County Jail." He believed he had made clear to the appellant he should return immediately if he was not admitted.

The appellant's mother picked him up the afternoon of Friday, August 11, 1978, and around 8:00 p.m. they arrived at Eden House in Minneapolis accompanied by appellant's girl friend. The appellant's mother and girl friend left him at Eden House with his personal belongings.

A resident at Eden House who acted as an intake counselor interviewed the appellant and gave him some information about the program. Appellant told the resident that he was scared and wanted the weekend to think about his decision to enter the program. One of them suggested that he discuss it with his mother and girl friend. Although the appellant denies it, the resident testified that appellant told him Mr. Kampa said he could make his decision about the program on Monday. The intake counselor had no authority to retain the appellant so he instructed him to call Sunday to tell them his decision. Leaving all of his belongings at Eden House, appellant walked to his girl friend's where he spent the weekend.

The appellant claims that he tried to call Eden House on Sunday but did not get through. There was no record of calls or messages from him despite the fact that all calls are recorded. Monday morning when his mother called to arrange to take him to Eden House, she could not reach him. She panicked and called the center to tell them that she would be bringing him in. Mr. Brock Schumacher, the director of Eden Day, told appellant's mother that he was under the impression that the appellant had failed to come to Eden House on Friday and that he was therefore reporting him to the St. Louis County authorities. Appellant's mother insisted that he had arrived on Fri-

day, but Mr. Schumacher was not persuaded.

The appellant and his mother then made several attempts to get him into a drug treatment program. On Tuesday, August 15, appellant had an interview with the director of Nexus, another drug treatment program in the Twin Cities, in hopes that he could help him get into Eden House. The next day, Schumacher personally told the appellant that he would not be admitted to Eden House so he should turn himself into the jail. Appellant planned to return to St. Louis County Jail that night, but his mother asked him to wait until Thursday so that she could drive him. On Thursday, August 17, the appellant voluntarily returned to St. Louis County Jail.

Meanwhile, on Monday, August 14, Schumacher called the Arrowhead Corrections Office where he reported to Michael Farrell, who was acting as appellant's probation officer, that appellant had failed to appear at Eden Center on Friday and consequently would not be admitted to the program. Once Schumacher realized that appellant had appeared, he wrote Arrowhead saying that the appellant had arrived but lied to an admission officer and failed to show a commitment to the program so would not be admitted. The letter did not arrive until Wednesday, and as a result of the erroneous conversation on Monday, Farrell obtained a bench warrant for appellant dated Tuesday, August 15.

On August 21, 1978, appellant was given notice of the following alleged grounds for revocation: "failure to follow through with stipulated conditions of release with respect to treatment at Eden Home facility." A hearing was held on September 28, 1978. Schumacher testified that, as of the time of the hearing, the appellant would be considered a good risk for the Eden program and would be accepted. Nevertheless, on October 19, 1978, the court revoked appellant's probation and reinstated his sentence. Appellant now appeals that order.

■ The trial court has broad discretion in determining if there is sufficient evidence to revoke probation and should be

reversed only if there is a clear abuse of that discretion. *State ex rel. Halverson v. Young*, 278 Minn. 381, 154 N.W.2d 699 (1967); *United States v. Strada*, 503 F.2d 1081, 1085 (8th Cir. 1974).

The threshold question in this case is what findings a trial court must make before revoking probation. For the future guidance of the lower courts, we adopt a three-step analysis which requires that before probation be revoked, the court must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation.

Although the lower court found that the appellant was "in violation of the terms of his probation" and did not designate which condition he violated, there was sufficient evidence to warrant finding that the appellant intentionally disobeyed his probation officer's instructions, and we therefore find no abuse of discretion in the decision to revoke probation. *Pearson v. State*, 308 Minn. 287, 241 N.W.2d 490 (1976).

Appellant's probation officer testified that he instructed appellant to return to the St. Louis County Jail if he was not admitted to Eden House and that the appellant appeared to understand that he was to return immediately if he did not enter the program. Between the evening of Friday, August 11, 1978, and Thursday, August 18, 1978, the appellant was neither at Eden House nor at the St. Louis County Jail. Consequently, the trial judge did not err in finding appellant had failed to comply with a condition of his probation.

The appellant relies on *State v. Nakamura*, 59 Haw. 378, 581 P.2d 759 (1978), to argue that his failure to comply was excusable. The case involved a probationer who had specifically requested to spend up to 10 hours with his mother. The drug treatment program denied him the request and refused to admit him when he, nevertheless, visited his family. The lower court revoked his probation because he violated the condition ordering him to enter that specific program until clinically released. The appellate court reversed on the grounds the drug treatment program had been arbitrary in rejecting him and the lower court inflexible about considering other programs. The appellate court relied heavily on the facts that the appellant had been a model probationer, who had been admitted to another program, and the importance of the familial relationships where there was no evidence his visit would be detrimental to his rehabilitation.

The present case is distinguishable. The appellant has not been a model probationer, he was not admitted to another program, he had not attempted to get permission to visit with his family, he did not call Eden House on Sunday, and there is no. evidence that the weekend he was absent was not detrimental to his rehabilitation.

The appellant also relies on *Gardner v. State*, 365 So.2d 1053 (Fla.App.1978) for the argument that he did not willfully disobey his conditions. In *Gardner,* the appellate court reversed revocation on the grounds that the conditions were not specific enough and the evidence showed he was making every possible effort to move to Missouri from Florida as directed. The appellant's car had broken down when he was trying to move but before he could get out of the state. The facts in the present case are distinguishable since nothing was physically preventing the appellant from either presenting himself to Eden House or returning to St. Louis County Jail. These cases do not persuade us that the trial court erred in deciding the appellant willfully violated his probation.

In some cases, policy considerations may require that probation not be revoked even though the facts may allow it, but this is not such a case. The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed. There must be a balancing of the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety. *Gagnon v. Scarpelli*, 411 U.S. 778, 785, 93

S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973). The decision to revoke cannot be "a reflexive reaction to an accumulation of technical violations" but requires a showing that the "offender's behavior demonstrates that he or she 'cannot be counted on to avoid anti-social activity.'" *United States v. Reed*, 573 F.2d 1020, 1024 (8th Cir. 1978) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 479, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972)). Trial judges must take care that the decision to revoke is based on sound judgment and not just their will. *State ex rel. Shock v. Department of Health and Social Services*, 77 Wis.2d 362, 253 N.W.2d 55 (1977). To insure that both the probationer's and the public's needs are served, the trial courts should refer to the following found in the American Bar Association Standards for Criminal Justice regarding probation:

Grounds for and alternatives to probation revocation.

(a) Violation of a condition is both a necessary and a sufficient ground for the revocation of probation. Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that:

(i) confinement is necessary to protect the public from further criminal activity by the offender; or

(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

(iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970).

The appellant has been offered treatment but has failed to take advantage of the opportunity or to show a commitment to rehabilitation so it was not unreasonable to conclude that treatment had failed. Moreover, the record shows the seriousness of his violation would be denigrated if probation were not revoked. Consequently, under these facts, policy considerations required revocation.

The appellant argues that he should have received a written copy of the conditions of his probation and we adopt this as the preferable practice. *People v. Susberry*, 68 Ill.App.3d 555, 386 N.E.2d 361 (1979); A.B.A. Standards for Criminal Justice, Probation § 3.1(a) Commentary (Approved Draft 1970). In *United States v. Dane*, 570 F.2d 840, 844 (9th Cir. 1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978), the court stated that:

[K]nowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation. On the other hand, where the proscribed acts are not criminal, due process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for those acts unless he is given prior fair warning. * * Of course, where the warning is not contained in a formal condition, the record must be closely scrutinized to determine whether the defendant did, in fact, receive the requisite warning.

A review of the record shows that the oral instructions which the appellant received were sufficient to warn him of the conditions of his probation, and the failure to provide him with written instructions does not warrant reversal under these circumstances.

The boilerplate instruction that appellant follow his probation officer's orders may be general but is necessary to give the probation officer some flexibility. In the future, the trial court should advise probationers that they can return to the court for clarification if necessary. A.B.A. Standards for Criminal Justice, Probation § 3.1(a) Commentary (Approved Draft 1970).

As to the issue of whether the instructions he received from his probation officer were too vague, we adopt the standard from *State v. Gardner*, 365 So.2d 1053 (Fla.App.1978), requiring that the probationer reasonably be able to tell what lawful acts were prohibited. A reasonable probationer would have understood that he was either to be admitted to the Eden

House Program or to return to the St. Louis County Jail so we find appellant's argument without merit.

▆▆▆▆ Finally, appellant complains that he was not given sufficient notice of the grounds of his revocation. There is no question that the United States Constitution, the Minnesota Constitution and Minnesota statutes require that the probationer be given written notice of the alleged grounds for revocation. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973), Minn.Const. art. I, § 7; Minn.Stat. § 609.14, subd. 2 (1978). Since the appellant did not raise this issue at the revocation hearing, the issue is waived.[1] *Pearson v. State*, 308 Minn. 287, 241 N.W.2d 490 (1976).

Affirmed.

OTIS, Justice (dissenting).

I disagree with the conclusion reached by the majority and would reverse the revocation of appellant's probation. While the district court possesses broad discretion in these cases, that discretion is by no means unbounded. This decision lies beyond the realm of that discretion because, even accepting that the district court found sufficient evidence of an intentional or inexcusable violation of probation, this is not a case where the "need for confinement outweighs the policies favoring probation."

We are presented with a nineteen year-old probationer with a drug problem, who had just completed three months in the St. Louis County Jail. The Friday after being released he went to the Eden House drug treatment center seeking admission to its rehabilitation program. After confessing to the intake counselor that he was scared, he left all of his belongings at the facility and walked to his girlfriend's residence where he spent the weekend. He and his mother thereafter made several attempts to enroll him in a treatment program. When these attempts proved unsuccessful, and after heeding the misguided advice of his mother that he wait an extra day, appellant voluntarily returned to the St. Louis County Jail on Thursday, six days after leaving Eden House.

While Eden House at first refused to enroll appellant after the incident, at the revocation hearing a director of one of the facility's programs testified that appellant would be accepted. In his words "Because we feel a sufficient amount of time has occurred between the date of his last attempt [to enroll] and now, and the jail time that he has received, plus the likelyhood (sic) that he has come to the sense of his own reality with what he faces, we feel he is a better risk than he was just after leaving."

These facts bespeak the impropriety of revoking appellant's probation. In reaching this conclusion I subscribe to the majority's adoption of § 5.1(a) of the American Bar Association's probation standards, which requires in revocation decisions a balancing of the goals of isolating dangerous individuals from the public, deterring future misconduct, and, where possible, rehabilitating offenders. I would go further, however, and endorse the second part of § 5.1, which provides in part:

> [T]he following intermediate steps should be considered in every case as possible alternatives to revocation:
>
> (i) a review of the conditions, followed by changes where necessary or desirable;
>
> (ii) a formal or informal conference with the probationer to reemphasize the necessity of compliance with the conditions;
>
> (iii) a formal or informal warning that further violations could result in revocation.

---

1. The notice the appellant received on August 21, 1978, stated the alleged grounds for revocation as "failure to follow through with stipulated conditions of release with respect to treatment at Eden House Facility." Although this may not have been the best possible notice, it was adequate to warn the appellant of the issues that could come up at the hearing. Moreover, he was able to prepare his defense pursuant to the standard enunciated in *State v. Enebak*, 272 N.W.2d 27 (Minn.1978).

A.B.A. Standards for Criminal Justice, Probation § 5.1(b) (Approved draft 1970).

Moreover, I agree with the committee that recommended these standards when they state:

[T]he fact that violation of a condition is a *permissible* basis for revocation does not support the idea that revocation should necessarily or automatically follow the establishment of a violation.

\* \* \* [T]his subsection is designed to reject the thesis that revocation should inexorably follow a violation because "the defendant has had his chance" or because of similar generalizations which may not fit the facts. \* \* \* [T]he public is not served by precipitate and automatic imprisonment following what under the circumstances might be either a technical violation or a violation which, though substantial, does not provide the kind of affirmative reasons for imprisonment which are set forth in this standard.

A.B.A. Standards for Criminal Justice, Probation § 5.1, Commentary (Approved Draft 1970).

The district court, by contrast, revoked appellant's probation with the admonition:

I would never have [placed you on probation in the first place]. \* \* \* You went [to prison] yourself; you had every opportunity that this system could give someone. \* \* \* [Y]ou've used it all up behind you.

In my opinion this reproach reflects the "defendant has had his chance" approach rejected by the ABA committee's standards.

Keeping those standards in mind, it is evident that appellant's probation should not have been revoked. While the probation violation was not insubstantial, it did not result in harm or in any threat of harm. The violation seems to reflect more a misguided impulse than a calculating or dangerous disposition. This case "does not provide the kind of affirmative reasons for imprisonment set forth in [the ABA] standard."

Furthermore, all parties acknowledge appellant's need for drug treatment, that such treatment was available at the time of the revocation hearing, and that sending appellant to the state reformatory will not effectively provide the necessary correctional treatment. Revoking appellant's probation under these circumstances belies the standards to which the majority purport to adhere.

I would reverse.

ROGOSHESKE, Justice. I join the dissent of Mr. Justice Otis.

WAHL, Justice. I join the dissent of Mr. Justice Otis.