*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0553**

State of Minnesota,
Respondent,

vs.

Johnny Carter,
Appellant

**Filed December 14, 2015
Affirmed
Harten, Judge\***

Stearns County District Court
File No. 73-CR-11-11287

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Carl Ole Tvedten, Assistant County
Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public
Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and

Harten, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HARTEN**, Judge

Appellant argues that the district court abused its discretion in revoking his probation because the need for his confinement did not outweigh the policies favoring probation. Because we see no abuse of discretion, we affirm.

**FACTS**

Following an incident in December 2011, appellant Johnny Carter, a resident of St. Cloud, Minnesota, was charged with felony DWI, felony DWI (refusal to submit to chemical test), and gross misdemeanor driving after cancellation. He pleaded guilty to felony DWI (refusal to submit to chemical test) in exchange for dismissal of the other counts, the right to move for a downward dispositional departure (66 months in prison, stayed), or, if the district court did not agree to the departure, a bottom-of-the-box 57-month sentence, executed.

In July 2012, appellant was sentenced to 66 months (the midpoint of the range for someone with appellant's criminal history score of 5) in prison, stayed; probation for seven years; 365 days in jail; abstention from the use of alcohol; and participation in an Intensive Supervision Program (ISP) until released by the agent.

In July 2013, appellant was convicted of gross-misdemeanor driving after cancellation. In October 2013, he tested positive for alcohol consumption, and a probation violation report was filed. At the hearing, he was sentenced to 30 days in jail with work-release privileges or electronic monitoring with house arrest and to follow the recommendations of a chemical dependency evaluation.

In June 2014, appellant again tested positive for alcohol consumption with a preliminary breath test (PBT) result of .026. He therefore failed to complete the ISP. A probation violation report was filed; at the hearing, appellant admitted the violations and was sentenced to 45 days in jail (two weeks on house arrest with electric monitoring, the remainder in jail with work-release privileges).

In September 2014, appellant once more tested positive for alcohol consumption with a PBT of .021 and, again, failed to complete the ISP. A probation violation report was filed; appellant was sentenced to 60 days in jail and ordered to complete a cognitive MRT program and an updated chemical dependency evaluation and to follow the recommendations.

Over the weekend of 22-23 November, appellant called the ISP whereabouts line to report that he was at home in St. Cloud. His agent then went to appellant's residence to administer a breathalyzer test and discovered that appellant was not at home. Suspecting that appellant was drinking and therefore trying to avoid him, the agent attempted to contact appellant by leaving messages on his cell phone, visiting his residence again, and leaving a message with appellant's girlfriend that appellant should call the agent.

On the morning of Monday, 24 November, appellant was at home in St. Cloud. However, he called the agent and said he was at his sister's residence in Chanhassen. Because this trip had not received the required pre-approval from the agent, it was an ISP violation. When the agent asked appellant if they could meet immediately, appellant said he could not get a ride until the next day. The agent told appellant to call the ISP

whereabouts line when he returned to St. Cloud and filed another probation violation report.

Appellant did not call the agent until Wednesday, 26 November. Again, although he was at home, he told the agent he was in Chanhassen and would take an extended urine alcohol test (ETG). The agent believed that this test would be useless if appellant had consumed alcohol on 22 November and told appellant that a probation violation report had been filed, a warrant had been requested, and therefore appellant would be taken into custody. Appellant, knowing that the agent would recommend prison, told the agent he would stay in Chanhassen for Thanksgiving the following day.

On 11 December, appellant was arrested on a warrant. At the probation violation hearing, he denied the events of 22-26 November. Another probation report was filed, but the hearing on that violation was continued at appellant's request. When the hearing was held, the state asked for execution of the 66-month prison sentence imposed in July 2012; appellant asked for jail time, chemical dependency treatment, and probation.

At the hearing, appellant testified that he called the agent to say he was at home on Saturday 22 November, left his home for Chanhassen "shortly after that," around 8:30 p.m., and returned home around 2:00 or 2:30 Sunday morning. He testified that he did not call the agent until Monday morning, 24 November, and, although he was then at home, he told the agent he was in Chanhassen because he "didn't want him [the agent] coming to [his] house." When asked if he had tried to evade his agent between his 24 November phone call and his 11 December arrest, appellant answered that the agent had told him on the phone, "I'm going to put out a warrant" and further testified that, because

4

the warrant had been put out, appellant did not get a test on the morning of the 24 November at his treatment facility in St. Cloud.

The district court told appellant:

> [Y]ou've been given more than the average number of chances a person would have to be successful on probation. . . . [Y]ou reverted to drinking again and that gave you three violations in a fairly short period of time. And even though there is no absolute proof that you were consuming alcohol in November of this year [2014], it's hard to come up with any conclusion other than that, given the pattern of not being available to surveillance. You knew that [an agent] would be there on a moment's notice to test you if they had missed you by accident. And I come to the conclusion that you were avoiding the agent because you knew you had been drinking and you didn't want to go to jail for another 45-or 60-day stint, or worse. And what you ended up doing was basically eliminating any chance to get another chance on probation. . . . The violations of absconding for that length of time, not being available for testing, and eventually avoiding and being dishonest with the agent, those are all extremely serious violations that were inexcusable and intentional. . . . [Your] confinement is necessary to protect the public from further criminal activity.

Appellant challenges the revocation of his probation and the execution of his sentence, arguing that the policies favoring probation outweighed his need for confinement.

## D E C I S I O N

To revoke probation, the state must provide clear and convincing evidence of probation violations. Minn. R. Crim. P. 27.04, subd. 2(1)(c)b. This court will not reverse a probation revocation unless there has been a clear abuse of the district court's broad discretion. *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980).

5

To revoke probation, the district court must (1) specify the probation condition that has been violated, (2) find that the violation was inexcusable or intentional, and (3) determine whether the need for confinement outweighs the policies favoring probation. *Id.* at 250. Appellant does not challenge the district court's determination that the first two criteria for revoking probation were met.

As to the third criterion, the need for confinement outweighs the policies favoring probation when the record, including the underlying offense and intervening conduct, shows that (1) confinement is necessary to protect the public from further criminal activity; (2) confinement can most effectively provide the setting for the offender's needed correctional treatment; or (3) not revoking probation would unduly depreciate the seriousness of the violation. *Id.* at 251. The district court concluded that "[T]o not execute the sentence would depreciate the seriousness of these most recent violations and . . . confinement is necessary to protect the public from further criminal activity."

Appellant argues that the district court abused its discretion because (1) "[his] violations were not so serious that execution of the 66-month sentence was the only appropriate remedy"; (2) "there were meaningful alternative sanctions available, like jail time and/or continued treatment"; and (3) "the more appropriate option [would have been] imposing additional time in the local jail, . . . additional time on electric home monitoring," and/or "any other appropriate programming like chemical dependency treatment as a consequence for appellant's violations." But this argument ignores the following facts: (1) the additional jail time, home monitoring, and treatment appellant identified as "a more appropriate option" had been repeatedly tried, without success;

6

(2) this was appellant's fourth violation in 17 months while on probation; and (3) only a short time passed between appellant's release from jail for a previous violation and 22 November, when he told his agent he was at home, left his home, absconded, and failed to maintain contact with his agent for 35 hours.

The district court did not abuse its discretion in revoking appellant's probation.

**Affirmed.**