*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1331**

State of Minnesota,
Respondent,

vs.

James Paul Wilkins,
Appellant.

**Filed March 21, 2016
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-14-4687

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Margaret G. Samec, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Kalitowski, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the district court's revocation of his probation, arguing that he did not intentionally violate probation and that the need for confinement does not outweigh the policies favoring probation. Because the district court did not abuse its discretion by revoking probation, we affirm.

## FACTS

Respondent State of Minnesota charged appellant James Paul Wilkins with two counts of first-degree burglary and one count of felony domestic assault. Pursuant to a negotiated plea agreement, Wilkins pleaded guilty to one count of first-degree burglary, and the state agreed to dismiss the other counts. As support for his plea, Wilkins testified that he kicked in the door to a house where a woman he knew lived, entered the home, encountered the woman and her two young children, took away her cell phone after she dialed 911, and "punched her a few times," causing injury to her lip and bruising to her arms.

The district court accepted the plea agreement and granted a downward dispositional departure, staying execution of a 58-month prison term for ten years. The district court ordered Wilkins to serve 365 days in a local correctional facility (workhouse). The district court also imposed several probationary conditions, including meeting with probation as directed and completing an in-custody chemical-dependency evaluation. The district court informed Wilkins:

[I]f that evaluation calls for treatment, . . . you complete—actually complete treatment while you are in custody.

I want to make that as clear as I can, that if your evaluation calls for treatment, that you need to engage, and if it all possible, complete the treatment in custody.

If you don't engage in that treatment and complete it, . . . that could be a basis to violate your probation. Do you understand that?

Wilkins responded: "Yes, Your Honor."

Shortly after Wilkins was released from the workhouse, the Ramsey County Corrections Department filed a probation-violation report, alleging that Wilkins was discharged from the Avalon chemical-dependency program at the workhouse for excessive absences that occurred while he was in segregation for fighting with other inmates. The report also alleged that Wilkins missed three scheduled appointments with his probation officer. Wilkins appeared in district court, admitted the violations, and asked for another chance to complete probation. The district court accepted Wilkins's admissions and found that the violations were intentional and "without legal justification or excuse." The district court stated it would not give Wilkins another chance on probation for a number of reasons:

First of all, the offense that you were sentenced for involved you kicking in the door of your ex-girlfriend and punching her in the face eight to ten times in front of her two youngest children.

. . . .

. . . [T]his was an assault that . . . followed . . . a number of other assaultive cases that you have faced, and the fourth felony in less than four years.

You got your break when you received a dispositional departure on this sentence, where there was no [presumptive] stay of execution, and that was your break, and you failed to take [the] opportunity of that.

You should have recognized it back then that you had work to do and you needed to do everything you could to comply with all the programming that was available to you in the workhouse, and you didn't do that.

. . . .

. . . [Y]ou were given repeated chances to address your violence through mental health counseling, trauma group, or chemical dependency treatment, but you couldn't fulfill those because of all the rule violations and the fact you were in segregation because of the choices that you made.

The district court found that the need for confinement outweighs the policies favoring probation, "primarily because [Wilkins's] compliance with probation, and the programming that has already been afforded to [him], has really been nonexistent." The district court also found that confinement was necessary to protect the public from further criminal behavior, that Wilkins could receive treatment most effectively in prison, and that it would undermine the seriousness of the violations if probation were not revoked.

The district court revoked Wilkins's probation and executed his 58-month prison sentence. Wilkins appeals.

**D E C I S I O N**

Before revoking probation, the district court "must (1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). In assessing the third

4

*Austin* factor, the supreme court has stated that district courts "should refer" to the following American Bar Association Standards for Criminal Justice:

> Revocation followed by imprisonment should not be the disposition . . . unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>
> (i)   confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii)   the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii)  it would unduly depreciate the seriousness of the violation if probation were not revoked.

*State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005) (quoting *Austin*, 295 N.W.2d at 251).

"The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted).  There must be clear-and-convincing evidence that a probation violation exists.  Minn. R. Crim. P. 27.04, subds. 2(1)(c)b, 3(1).  "The [district] court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Austin*, 295 N.W.2d at 249-50.

Wilkins contends that the district court abused its discretion by revoking his probation because the evidence did not establish that he intentionally failed treatment or that the need for confinement outweighs the policies favoring probation.  Wilkins first argues that the "facts demonstrate that he was not intentionally missing treatment or

5

refusing to participate" because "there was no allegation that [he] was not fully participating in the sessions he attended or that he was not completing the work staff [assigned]." Instead, Wilkins argues, he "was discharged from treatment based on conduct that had nothing whatsoever to do with treatment: namely, he was fighting with other people in the jail and was put into segregation for his conduct."

Those arguments miss the mark. Wilkins was required to complete treatment as a condition of probation. He did not. Whether he fully engaged in treatment before he was discharged does not change the fact that he did not complete treatment. The district court noted that Wilkins did not complete treatment because of his "rule violations and the fact [that he was] in segregation because of the choices that [he] made." Wilkins's admission that he was discharged from treatment as a result of his placement in segregation for fighting with other inmates clearly and convincingly supports the district court's finding that Wilkins intentionally and inexcusably violated probation.

Wilkins next argues that the need for confinement does not outweigh the policies favoring probation. As to his missed probation appointments, Wilkins argues that "his personal life was . . . unsettled" and that he initially "ignored probation because he wrongly thought he would have a better outcome by going through the court system." But when he later "realized he was wrong, he committed to cooperating with probation." This argument demonstrates that Wilkins is not amenable to probation supervision. Wilkins ignored the basic requirement that he meet with his probation officer until he decided that it was in his best interest to do so. There is little reason to believe that Wilkins is amenable to probationary supervision or that he will cooperate with probation in the future.

6

Wilkins also argues that revocation was "not automatically required" and that "it is merely one of the options available to the district court," relying on *Austin.* *See* 295 N.W.2d at 250 (stating that "policy considerations may require that probation not be revoked even though the facts may allow it"). Wilkins suggests the following reasons to continue probation: "[h]e secured a place to live, established a support system, connected with his son, and expressed a willingness to commit to probation."

Policy considerations do not favor Wilkins. As the district court reasoned, Wilkins's compliance with probation was unsatisfactory and confinement is necessary to protect the public from further criminal behavior. The district court noted that the underlying offense involved physical violence, Wilkins has a history of "assaultive cases," Wilkins committed four felonies in less than four years, and Wilkins has failed to address his violent tendencies through therapeutic services. The district court also reasoned that Wilkins is in need of correctional treatment which can most effectively be provided if he is confined, noting his lack of initiative while on probation and his history of treatment and programming failures due to rule violations. Lastly, the district court reasoned that it would depreciate the seriousness of the violations if probation were not revoked, noting that Wilkins did not take advantage of his opportunity to remain in the community on probation. On this record, there is no basis for this court to conclude that the district court abused its discretion by revoking Wilkins's probation.

In his pro se supplemental brief, Wilkins asserts that the district court failed to provide him "fair warning of those acts which may lead to a loss of liberty." The record refutes Wilkins's assertion. At sentencing, the district court clearly advised Wilkins that

7

his failure to complete treatment, "could be a basis to violate your probation."  The district court asked if Wilkins understood, and Wilkins replied:  "Yes, your honor."  In sum, Wilkins's pro se supplemental brief does not provide a basis for relief.

**Affirmed.**