*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1345**

State of Minnesota,
Respondent,

vs.

Byron Dean Sayers,
Appellant.

**Filed April 25, 2016
Reversed and remanded
Reyes, Judge**

Hubbard County District Court
File No. 29-CR-14-256

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donovan D. Dearstyne, Hubbard County Attorney, Park Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Klaphake, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REYES**, Judge

Appellant Byron Sayers challenges his probation revocation, arguing that the district court did not make sufficient fact findings on any of the necessary factors under *State v. Austin*, 295 N.W.2d 246 (Minn. 1980). Because the district court did not make adequate findings regarding the second and third *Austin* factors, we reverse and remand.

**FACTS**

In 2014, Byron Sayers was on probation and living with his fiancée, B.M. B.M.'s adult son came to stay with the couple and brought his three firearms with him. The firearms were stored in an unlocked closet in the couple's bedroom. On March 7, Sayers's probation officer and several police officers arrived at the home to conduct a check because they had received information that he was keeping a shotgun in his bedroom closet. Sayers admitted to the officers that the firearms were in his closet, and the state subsequently charged him with one count of possession of a firearm by an ineligible person in violation of Minnesota Statutes section 624.713, subdivision 1(2) (2012). He pleaded guilty to the charge in exchange for a stay of adjudication and ten years of probation.

Almost three months after the entry of his plea, Sayers admitted to violating the terms of his probation by drinking alcohol. The district court ordered Sayers to serve 90 days' local incarceration and reinstated the stay of adjudication. Several weeks after he was released from jail, police were called to B.M.'s residence on a report of domestic violence. Hubbard County deputy sheriff Shane Plautz testified at a contested omnibus

2

hearing on Sayers's third-degree assault charge that when he arrived at the home he found Sayers in the kitchen. Sayers appeared to be very intoxicated, but there was no indication that Sayers had assaulted B.M. The deputy testified that Sayers became belligerent and attempted to enter the bedroom where B.M. was located. The deputy tried to block Sayers's path, prompting Sayers to shove the deputy into the refrigerator and throw a punch at his head. The deputy pursued Sayers into the bedroom and tackled him onto the bed and on top of B.M. Another officer helped subdue Sayers by tasing him, and Sayers was placed under arrest. Deputy Plautz suffered a dislocated shoulder as a result of the altercation.

Based on this incident, Sayers was charged with third-degree assault, fourth-degree assault, and obstructing legal process with force. Sayers's probation officer also filed a report alleging that he violated his probation because he failed to abstain from alcohol, failed to submit to drug and alcohol testing, and failed to remain law abiding. Sayers pleaded guilty to obstructing legal process with force and admitted that he violated his probation by drinking alcohol and by failing to remain law abiding. At his sentencing hearing, Sayers submitted a chemical-dependency assessment that recommended inpatient alcohol treatment, and he requested that the court give him an opportunity to attend a treatment program. The district court judge stated that he would take the issue under advisement.

At his probation revocation hearing before the same judge, the parties acknowledged that Sayers had admitted to violating the terms of his probation on two different occasions since the stay of adjudication had been granted. The district court

decided to revoke Sayers's probation and vacate the stay of adjudication, enter a judgment of conviction, and sentence Sayers to 63 months in prison, stating:

> All right. I am going to vacate the stay of adjudication, Mr. Sayers. Those two violations here, both were um, underscored by your use of alcohol. And the most recent one, there was an emergency call placed, law enforcement responded based on allegations of assaultive behavior toward [B.M.]. I know you pled guilty to an obstructing charge rather than the assault charge. An officer was injured in the course of taking you into custody. But, more importantly, I'm seeing an escalation of your behaviors. No showing that you are taking the restrictions and terms of your probation seriously. You were granted an extremely[] huge opportunity by getting the stay of adjudication. And I understand the background of the case that the guns were somebody else's. [B.M.'s] son or step-son. But nonetheless, they were in your possession. You were convicted of that–you pled guilty to that offense. I did not enter adjudication at that time, based on a joint request. And so, you had the support of the State at that time. They thought that was a reasonable way to address this. You have the support of probation, even at the time of the first violation. Ms. Welk, as I recall, did not think, at that point, your use of alcohol should result in you going to prison. But when I look at the whole history of this case, I see an escalation and therefore, I am going to revoke the stay of adjudication.

The district court judge did not address Sayers's earlier request to attend inpatient alcohol treatment. Sayers now appeals.

## D E C I S I O N

When a probationer violates a term of his probation, the district court has the option to continue probation, revoke probation and impose a stayed sentence, or order intermediate sanctions. Minn. Stat. § 609.14 subd. 3 (2014). The district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Austin*, 295 N.W.2d

4

at 249-50.  But before revoking probation, the district court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation."  *Id.* at 250.  We review de novo whether the district court has made the required *Austin* findings.  *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

Sayers argues that the district court erred by revoking his probation without making any of the necessary *Austin* findings.  When performing the *Austin* analysis, the Minnesota Supreme Court has held that the district court must make specific findings that convey the "substantive reasons for revocation and the evidence relied upon," and may not simply "recit[e] the three factors and offer[] general, non-specific reasons for revocation."  *Id.* at 608.  The district court need not issue a written order, but it must "create [a] thorough, fact-specific record[] setting forth [its] reasons for revoking probation."  *Id.* & n.4.  Even if the evidence is sufficient to support the revocation, failure to address all three *Austin* factors requires reversal and remand.  *Id.* at 606-08 (reversing and remanding because the district court did not address the second and third *Austin* factors).  Because the record here does not indicate that the court sufficiently considered the second and third *Austin* factors, we reverse and remand.

## I.    The First *Austin* Factor

To satisfy the first *Austin* factor, the district court must designate which specific probation conditions were violated.  *Austin*, 295 N.W.2d at 250.  Sayers admitted to violating the terms of his probation by drinking alcohol on two occasions and by failing to remain law abiding.  At his probation-revocation hearing, both parties acknowledged

on the record that these admissions were made. Because the district court's analysis references those violations, the record is sufficient for us to conclude that the court accepted Sayers's admissions and implicitly found the first *Austin* factor to be satisfied.

## II.    The Second *Austin* Factor

Under the second *Austin* factor, the district court must find that the probationer's violations were intentional or inexcusable. *Id.* Here, it is not evident that the district court made the necessary findings. Although the district court appears to have recognized Sayers's admissions that he violated his probation, this is a separate inquiry than whether those violations were intentional or inexcusable. The district court's analysis does not contain any statements with regard to Sayers's reasons for the violations. Because there is no unequivocal statement by the court, *Modtland*'s requirement that the court "create [a] thorough, fact-specific record[]" stating the reasons for the revocation is not satisfied. 695 N.W.2d at 608.

## III.    The Third *Austin* Factor

The third *Austin* factor requires the district court to consider whether the need for confinement outweighs the policies favoring continued probation. *Austin*, 295 N.W.2d at 250. The district court "must bear in mind that 'policy considerations may require that probation not be revoked even though the facts may allow it' and that '[t]he purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed.'" *Modtland*, 695 N.W.2d at 606 (alteration in original) (quoting *Austin*, 295 N.W.2d at 250). In making this determination, the district court considers whether:

6

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (quotation omitted).

The district court here did not explicitly consider any of the three subfactors, did not make any findings on the policies favoring probation, and did not make an explicit finding as to whether the need for Sayers's confinement outweighed the strong policies favoring probation. In determining that Sayers's probation should be revoked, the court noted what it believed was an "escalation" in his behavior in that his most recent probation violation involved the injury of a police officer. It also expressed the opinion that Sayers was not "taking the restrictions and terms of [his] probation seriously." Although these findings relate *generally* to the need to confine Sayers, this is only part of the necessary analysis. *Austin* requires the district court to go further and weigh that need against the policies in favor of probation. Here, the district court did not address the policies favoring probation, including rehabilitation and whether treatment has failed. In particular, it failed to address Sayers's earlier request to attend inpatient chemical-dependency treatment. Without any consideration of whether such treatment could have helped Sayers, or why this course of action was inferior to revocation, we lack a sufficient record to review whether the district court abused its discretion in choosing to revoke. *See id.* at 608 ("[I]t is not the role of appellate courts to scour the record to determine if sufficient evidence exists to support the district court's revocation.").

7

Because the record is inadequate with regard to the second and third *Austin* factors, including the three subfactors, we reverse and remand for additional findings.

**Reversed and remanded.**