*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-0282**

State of Minnesota,
Respondent,

vs.

Jaquelyn Marie Olcott,
Appellant.

**Filed September 30, 2024**
**Affirmed**
**Johnson, Judge**

Becker County District Court
File No. 03-CR-22-763

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brian W. McDonald, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Johnson, Judge; and Reilly,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

Jaquelyn Marie Olcott pleaded guilty to a felony-level charge of driving while impaired. The district court imposed a prison sentence but stayed execution of the sentence and placed Olcott on probation, with conditions. One year later, the district court revoked Olcott's probation after finding that she violated multiple conditions of her probation. We conclude that the district court made the necessary findings before revoking Olcott's probation, and we further conclude that the record supports the district court's findings. Therefore, we affirm.

## FACTS

In April 2022, a Becker County deputy sheriff stopped Olcott's vehicle based on a report that she was driving while impaired. Olcott was arrested after she appeared to the deputy to be impaired. At the county jail, Olcott provided a breath sample, which revealed an alcohol concentration of 0.24.

The state charged Olcott with driving while impaired (DWI), in violation of Minn. Stat. § 169A.20, subd. 1(1), (5) (2020), and driving after cancellation as inimical to public safety, in violation of Minn. Stat. § 171.24, subd. 5 (2020). The state alleged a felony-level DWI offense because Olcott had three prior DWI convictions within the previous 10 years. *See* Minn. Stat. § 169A.24, subd. 1(1) (2020).

In September 2022, Olcott pleaded guilty to the DWI charge, and the state dismissed the charge of driving after cancellation. In October 2022, the district court imposed a 36-month prison sentence but stayed execution of the sentence and placed Olcott on probation

2

for five years, with conditions. Among the probation conditions are the requirements that Olcott abstain from alcohol and controlled substances, follow all recommendations of a comprehensive chemical-dependency assessment, and complete a DWI Court program.

Olcott's probation officer filed a probation-violation report in July 2023 and three addenda in August and September of 2023. The probation officer alleged that Olcott violated probation conditions by not abstaining from alcohol and controlled substances, not following the recommendations of a comprehensive chemical-dependency assessment, and not successfully completing the DWI Court program.

The district court conducted a probation-revocation hearing in November 2023. Olcott denied all of the alleged violations. Olcott's probation officer testified that Olcott tested positive for methamphetamine on two dates (and admitted to using methamphetamine) and tested positive for alcohol on four dates. The probation officer also testified that Olcott was discharged from a treatment program, which was recommended by her chemical-dependency assessment, because of the positive test results and her ongoing use of alcohol and methamphetamine. The probation officer further testified that Olcott was discharged from the DWI Court program because of her lack of honesty while in the program and her continued use of alcohol and methamphetamine.

Olcott also testified at the probation-revocation hearing. On direct examination, she testified that one or more of her positive alcohol test results were caused by her consumption of kombucha, a slightly fermented, sweetened tea. She also testified that she had "a lot going on" because she was dealing with anxiety and depression, she had become a student again, and her mother was experiencing health problems. Olcott testified that she

could successfully complete probation if she were reinstated. On cross-examination, she denied using methamphetamine and denied admitting it to her probation officer, and she testified that she takes prescribed medications that can lead to a positive test result.

One week after the hearing, the district court filed an order with thorough findings of fact and conclusions of law. The district court found that Olcott had committed the alleged violations, revoked Olcott's probation, and executed her 36-month prison sentence. Olcott appeals.

**DECISION**

Olcott argues that the district court erred by revoking her probation and executing her prison sentence. The state did not file a responsive brief. Nonetheless, this court must determine the appeal on the merits. *See* Minn. R. Civ. App. P. 142.03.

If a probationer violates one or more conditions of probation, a district court may continue an existing stay of execution or may revoke probation and execute the underlying sentence. Minn. Stat. § 609.14 (2020); Minn. R. Crim. P. 27.04, subd. 3(2)(b)(iv)-(v). The supreme court has prescribed a three-step analysis to guide district courts in determining whether to revoke probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). A district court may revoke probation if the court (1) designates the specific conditions of probation that have been violated, (2) finds that the violations were "intentional or inexcusable," and (3) finds "that need for confinement outweighs the policies favoring probation." *Id.* In making these findings, district courts "must seek to convey their substantive reasons for revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). This court applies an abuse-of-discretion standard of

4

review to a district court's decision to revoke probation because a district court "has 'broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion.'" *Id.* at 605 (quoting *Austin*, 295 N.W.2d at 249-50).

Olcott makes two arguments for reversal, which we consider in turn.

**A.**

Olcott first argues that the evidence in the record of the probation-violation hearing does not establish that she intentionally and inexcusably violated conditions of her probation.

The second *Austin* factor is concerned with whether a probationer's violation was "intentional *or* inexcusable." *Austin*, 295 N.W.2d at 250 (emphasis added). Because the two requirements are stated in the disjunctive, a district court is not required to find that a probationer's violation is both intentional *and* inexcusable. *See State v. Davis*, No. A20-0448, 2021 WL 416410, at *5 (Minn. App. Feb. 8, 2021), *rev. denied* (Minn. Apr. 28, 2021); *State v. Jackson*, No. A20-0782, 2021 WL 21437, at *2 (Minn. App. Jan. 4, 2021), *rev. denied* (Minn. Mar. 30, 2021); *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c) (providing that nonprecedential opinions are "not binding authority" but "may be cited as persuasive authority").

With respect to the district court's finding that Olcott did not abstain from alcohol and controlled substances, Olcott contends that one or more positive results for alcohol were caused by her consumption of kombucha and that there is no evidence that she continued to drink kombucha after learning that it was prohibited by a condition of her

5

probation. But the district court specifically stated that it "does not believe that testimony." The district court's credibility determination is supported by the testimony of Olcott's probation officer, who testified about Olcott's dishonesty in DWI Court and also testified (without objection) that a lab technician had told her that kombucha likely did not cause Olcott's positive test result. Olcott also asserts that she does not use methamphetamine and did not admit to using it. But Olcott does not dispute that she tested positive for methamphetamine, and Olcott's probation officer testified that Olcott admitted to using methamphetamine.

With respect to the district court's finding that Olcott did not follow the recommendations of a comprehensive chemical-dependency assessment, Olcott contends that she wanted to engage in treatment but had issues with transportation and insurance coverage and that she achieved minimal compliance by attending a few appointments. The district court found that Olcott was discharged from her treatment program because she relapsed, did not take the steps necessary to enter another treatment program, and "demonstrated a pattern of lack of follow through." The district court's findings are supported by the testimony of Olcott's probation officer, who testified that Olcott attended only five of 13 appointments, continued to use alcohol and controlled substances while in treatment, did not take the treatment program seriously, and did not follow through on a recommendation that she engage in a more-intensive treatment program.

With respect to the district court's finding that Olcott did not successfully complete the DWI Court program, Olcott contends that she "was committed to the program and motivated to continue in it." The district court made findings to the contrary. The district

6

court found that Olcott "struggled with honesty and keeping in communication with" her probation officer and "continued to abuse chemicals." The district court also found that the DWI Court "put in more work . . . than [Olcott] did." Again, the district court's findings are supported by the testimony of Olcott's probation officer, a member of the DWI Court team, who testified that Olcott was not honest with the DWI Court and did not meet expectations for maintaining communications. The probation officer explained that, when Olcott first struggled with chemical dependency while in DWI Court, the program team initially refrained from terminating her participation, instead taking a "wait and see" approach. But, after Olcott tested positive for alcohol and methamphetamine multiple times, the DWI Court decided in September 2023 to discharge her from the program despite her expressed desire to remain in the program.

Thus, the record is sufficient to establish that Olcott intentionally or inexcusably violated three conditions of her probation.

**B.**

Olcott also argues that the district court erred by finding that the need for confinement outweighs the policies favoring probation.

A district court may find that the third *Austin* factor is satisfied if it finds that any of the following three sub-factors are present: (1) "'confinement is necessary to protect the public from further criminal activity by the offender,'" (2) "'the offender is in need of correctional treatment which can most effectively be provided if [s]he is confined,'" or (3) a further stay of the sentence "'would unduly depreciate the seriousness of the

7

violation.'" *Austin*, 295 N.W.2d at 251 (quoting A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)).

With respect to the district court's finding concerning the second sub-factor, that Olcott is in need of correctional treatment that can be provided most effectively in prison, Olcott contends that she was willing to participate in treatment while on probation and had made efforts to do so. The district court, which was aware that Olcott committed the offense in this case while on probation for a prior DWI conviction, specifically stated that Olcott "is unamenable to community-based treatment." The district court's decision is supported by the testimony of Olcott's probation officer, who testified that Olcott would be even less likely to succeed in a traditional probation setting than in the more-intensive and more-structured setting of DWI Court. The district court did not abuse its discretion by finding that Olcott is in need of correctional treatment that can be provided most effectively in prison.

With respect to the district court's finding concerning the third sub-factor, that staying Olcott's prison sentence further would unduly depreciate the seriousness of her violations, Olcott reiterates that she is motivated to complete her term of probation and asserts that her probation officer was willing to continue working with her. The district court believed that Olcott's multiple violations of probation conditions, as well as her failure to successfully complete probation after her previous DWI conviction, justify the execution of her stayed prison sentence. In light of the record as a whole, the district court did not abuse its discretion by finding that not revoking Olcott's probation would unduly depreciate the seriousness of her violations.

In sum, the district court did not err by revoking Olcott's probation and executing her prison sentence.

**Affirmed.**