*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0650**

State of Minnesota,
Respondent,

vs.

Jeremy Robert Sierra,
Appellant.

**Filed January 5, 2026**
**Affirmed**
**Ross, Judge**

Stearns County District Court
File No. 73-CR-22-3379

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Kyle R. Triggs, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Hannah Laub, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Frisch, Chief Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Jeremy Sierra pleaded guilty to first-degree drug possession after police stopped him for driving erratically on the interstate and found more than 350 grams of methamphetamine in his car. The district court stayed execution of his 128-month prison

sentence and placed him on probation. Sierra appeared to succeed in treatment, but he violated the conditions of his probation because of drug use and returned to court three times before the district court revoked his probation and executed his prison sentence. Sierra argues on appeal that the district court abused its discretion by reflexively revoking his probation for mere technical violations. Because Sierra's repeated methamphetamine-use violations were not merely technical violations and the district court acted within its discretion by revoking his probation, we affirm.

**FACTS**

The state alleged in an April 2022 criminal complaint that a state trooper stopped a pickup truck operated by Jeremy Sierra reported to have been straddling the two westbound lanes of Interstate 94, driving on the shoulder, and five times veering into the ditch. The complaint asserted that an assisting police officer found various drugs and drug paraphernalia in Sierra's truck, including close to 370 grams of methamphetamine. Sierra pleaded guilty in June 2023 to first-degree drug possession and completed a year-long drug-recovery program at Minnesota Adult and Teen Challenge, graduating with honors and beginning a front-desk internship position at one of the program's facilities.

Sierra appeared for sentencing in February 2024, facing a 128-month presumptive prison term. The district court recognized Sierra's success in the recovery program and his sobriety, and it stayed execution of the sentence on probationary terms for five years. Those terms included, among others, remaining law abiding and abstaining from possessing alcohol or illegal drugs.

2

Sierra began struggling to maintain his sobriety. Sierra and his probation agent entered into a probation-violation sanction agreement on August 12, 2024, in which Sierra acknowledged that a glass "meth pipe" had been in his car and that he used methamphetamine on July 28.

Sierra's probation agent filed a probation-violation report for continued misconduct after Sierra was arrested on August 23. The agent reported that Sierra possessed alcohol in his vehicle, was suspected of traveling overnight from Crow Wing County to the Twin Cities to meet a drug supplier, and admitted to possessing drugs and drug paraphernalia and to using methamphetamine on four dates between July 17 and August 23. The district court conducted a hearing during which Sierra admitted to two violations (failing to abstain from nonprescribed drug use and possessing alcohol). The district court ordered him to serve 60 days in jail but did not lift the stay of execution.

Sierra served the jail term and reentered inpatient treatment at Teen Challenge, which referred him to Vinland National Center because he had begun taking prescribed medication that Teen Challenge does not permit on its premises. Vinland determined that an intensive, outpatient, sober-housing program would better suit Sierra's needs and therapeutically discharged him to a sober-living home in St. Cloud. Probation then placed Sierra on its Enhanced Supervision Program.

Sierra's probation agent filed another report in November 2024, alleging that Sierra violated his probation terms by using methamphetamine and failing to disclose contact with police. The agent later amended the report by adding that Sierra had also used unprescribed Alprazolam or Xanax and Clonazepam or Klonopin.

The district court held a contested revocation hearing during which Sierra admitted to violating his probation by using methamphetamine and by ingesting it intentionally. The district court found that he violated his probation by failing to abstain from mood-altering chemicals and that the violation was intentional or inexcusable. The state withdrew the police-reporting violation. The parties did not address the added allegations.

Sierra's probation agent testified that he believed Sierra was no longer amenable to probation given his multiple violations and posttreatment relapse history. The agent recounted that Sierra had been in "approximately seven" treatment programs since 2014 but continued his illegal-drug use. He testified that Sierra's latest violations occurred while he was on the maximum level of supervision and that he did not know of a less-restrictive alternative to incarceration under the circumstances.

The district court revoked Sierra's probation and executed his sentence. It found that Sierra needed treatment best provided in confinement under the circumstances and that his confinement was also necessary to protect the public from his criminal behavior. It also found that not revoking Sierra's probation would unduly depreciate the seriousness of his violation. It reasoned too that executing the sentence was the last resort given Sierra's repeated rehabilitation-relapse cycles while not incarcerated. The district court executed the 128-month prison sentence. Sierra appeals.

## DECISION

Sierra argues that the district court abused its discretion by revoking his probation. We reverse a revocation decision only for "a clear abuse" of discretion. *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn. 1980). Sierra argues specifically that the district court abused

4

its discretion by revoking his probation for "an accumulation of technical violations," and he maintains that the need for his confinement does not outweigh the policies favoring probation. His arguments fail.

The district court considered Sierra's violations under the proper standard before revoking his probation. To revoke probation, a district court must specify the violated probation condition, find the violation intentional or inexcusable, and find that the need to confine the probationer outweighs the policies favoring probation. *Id.* at 250. Sierra argues that the district court abused its discretion by failing to rightly apply the need-for-confinement factor because he engaged in merely "technical violations." It is true that the district court's revocation decision "cannot be a reflexive reaction to an accumulation of technical violations but [instead] requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotations omitted). But the district court based its decision on Sierra's demonstrated inability to avoid returning to illegal drugs, and we hold that its decision was not reflexive because the court carefully explained its findings and reasoning on the record.

Sierra contends unpersuasively that the district court erroneously concluded that he needs treatment best provided in confinement. The need to confine a probationer outweighs the policies favoring his probation when confinement is necessary to protect the public from further criminal activity, the probationer needs correctional treatment most effectively provided in confinement, or not revoking probation would unduly depreciate his violation's seriousness. *State v. Modtland*, 695 N.W.2d 602, 606–07 (Minn. 2005). The record supports the district court's findings that Sierra repeatedly participated in treatment

programs, showed preliminary signs of success, and then fell again into illegal-drug activity. Particularly difficult for Sierra's contention, the district court was reasonably concerned that he did so even while being subject to the most scrutinizing supervision level available to hold him accountable and maintain his sobriety. The district court had no reason to question the opinion of Sierra's probation agent that Sierra has proven to be no longer amenable to probation. Because the record amply supports the district court's finding that Sierra needs correctional treatment most effectively provided in confinement, it necessarily supports the court's conclusion that the need to confine him outweighs the policies favoring his continued probation.

We are not persuaded otherwise by Sierra's emphasis that the state recognized that he found success at Teen Challenge's inpatient program or by his observation that his relapses occurred after instances of his involuntary removal from Teen Challenge programming. These are circumstances the district court could, and did, consider, but once the circumstances justify the district court to revoke probation, the decision whether to revoke rests within its broad discretion. *See Austin*, 295 N.W.2d at 249–51. The district court clearly recognized Sierra's considerable effort to maintain his sobriety in his roller-coaster journey in and out of drug use, but its decision ultimately reflects that, despite Sierra's efforts, revocation is fitting here "as a last resort when rehabilitation has failed." Minn. Stat. § 609.14, subd. 1(a) (2024). Having afforded Sierra multiple opportunities to succeed, the district court acted within its discretion in revoking his probation and executing his sentence.

**Affirmed.**